RICHARD L. CASEY & another *vs.* FRITZ CARLTON HOTEL COMPANY.

Suffolk.     November 12, 1925. — January 5, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Broker*, Commission.  *Evidence*, Relevancy.

The right of a real estate broker to a commission for procuring a purchaser of certain hotel property in a city is not affected if, when he has procured and has presented to the owner a customer who is able, ready and willing to buy on the terms at which the broker was authorized to offer the property, which included the payment of $100,000 in cash at the passing of the deed and the assumption of a first mortgage then on the premises in the amount of $150,000, and the giving to the owner of a second mortgage of $200,000, the owner for the first time exacts, as additional conditions to his agreeing to sell, that the customer shall produce a certified check in the amount which he was not to pay in cash until at the passing of the deed, and that he shall "protect" the mortgages; and, when the customer does not comply with such demands, refuses to sell to him.

The right of a broker to a commission in the circumstances above described was not determined by the issue, whether a purchaser had been found and every possible situation which might arise before the conveyance became accomplished was agreed upon between the defendant and that purchaser, but by the issue, whether a purchaser had been produced who was ready, able and willing to take the property upon the terms which the broker had been authorized to offer to a customer as the basis of a final contract with the owner.

At the trial of an action by the broker against the owner for a commission alleged to have been earned in the circumstances above described, it was proper for the trial judge in his discretion to admit evidence in cross-examination of the defendant to the effect that a church was to be erected on a vacant lot opposite the hotel, such evidence being relevant to the motive which led the defendant to refuse to go forward with the sale.

CONTRACT for $10,000, alleged to be due the plaintiffs as a commission for procuring a customer to purchase the defendant's hotel on terms fixed by the defendant. Writ dated November 10, 1922.

In the Superior Court, the action was tried before *Lawton*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. There was a verdict for the plaintiff in the sum of $11,350. The defendant alleged exceptions.

*F. J. Carney*, (*P. E. Troy* with him,) for the defendant.

*J. M. Graham*, for the plaintiff.

PIERCE, J. This is an action of contract to recover a real estate brokerage commission. The exceptions relate to the refusal of the judge to allow the defendant's motion for a directed verdict and to the admission of certain evidence.

The defendant, Fritz Carlton Hotel Company, owns, and all during the year 1922, owned and operated, the Fritz Carlton Hotel, located at the corner of Boylston Street and Hemenway Street, Boston, Massachusetts. "It is agreed that Mina E. Fritz, the President and Treasurer of the defendant corporation, had authority to act for and to bind the defendant in its dealings with the plaintiffs as brokers concerning the proposed sale of its hotel property to John F. Sullivan." The defendant admits "If any commission is due, the amount of same was agreed on between the plaintiffs and the defendant to be ten thousand dollars ($10,000)." It is not disputed that the plaintiffs, doing business under the firm name of R. L. Casey and Company, in all the transactions involved in the determination of the right of the plaintiffs to a commission, were represented by a member of that firm, William H. Green.

The evidence warranted a finding that in the spring of

1922, Miss Fritz employed the plaintiffs to find a buyer for the hotel property at the price of $450,000, of which $100,000 was to be paid in cash, the balance to be secured by the assumption of a first mortgage of $150,000, which was on the property and could remain, and a second mortgage of $200,000 to the defendant, payable $15,000 on the principal each year until paid, with interest at the rate of six per cent; that the plaintiff Green laid the proposition of Miss Fritz before one John F. Sullivan, then proprietor of the Hotel Oxford on Huntington Avenue; that some weeks later, at the request of Miss Fritz, he introduced Sullivan, his wife and her sister to Miss Fritz at the Fritz Carlton Hotel; that Miss Fritz said she would like to dispose of all her holdings in Boston, and she showed them around the house through as many rooms as were available; that she said she was asking $450,000 for the house — $100,000 had to be cash — that she could take care of the mortgages; that Sullivan made no offer to her at that time but talked with the plaintiff Green at different times subsequently in reference to the matter; that Sullivan again saw Miss Fritz in October; that they talked about the money to be raised, $100,000; that Miss Fritz said she had looked up his references, and that where he had his wife's sister in the hotel with him, and his wife, she thought they would do fine there, and that they were just the people she would like to see get the hotel; that she was asking $100,000 cash; that she could take care of the second mortgage but he was to pay it off $15,000 a year; that the full purchase price was $450,000, and the interest on the second mortgage was to be at six per cent.   It further could have been found warrantably on the evidence, that the plaintiffs made an offer to Miss Fritz on behalf of Sullivan of $400,000 — $75,000 in cash — subject to first and second mortgages to be arranged by the defendant; and made an offer of $425,000 — $75,000 in cash; and that Miss Fritz said no to each of these proposals.

A letter, dated September 2, 1922, was sent by the plaintiff Green to Miss Fritz, and was received by her, in these terms: "Dear Madam   The writer can close a sale on the Hotel Carleton as follows.   Price $400,000.00   $100,000.00 to be

paid in cash, and subject to a first mortgage of $250,000 provided you will take a straight second mortgage of $150,000.00 As I understood from you the present first mortgage could be paid off. The above purchase price is to include all your right, title and interest, both real and personal, to-gether with furnishings, business, and good will of the Fritz Carleton Hotel, located at 1138 Boylston Street, Boston, Mass. Very Respty (Signed) Wm. H. Green"

On September 4, 1922, in reply, he received the following letter: "My dear Mr. Green: Four hundred thousand would not interest me as I paid more. Why not try to sell your people the Princeton as it will not require so much cash and great opportunity for a Cafeteria. Yours truly, (Signed) M. E. Fritz"

In answer to this, the plaintiff Green, on September 26, 1922, wrote Miss Fritz, and she received, the following letter: "Dear Madam: My customer, Mr. Sullivan, is ready with $100,000. cash, which you said you would take on sale of Fritz-Carlton property. Full amount purchase price $450,-000. Balance on mortgage. Now, awaiting to close the deal. Respectfully, (Signed) Wm. H. Green"

Miss Fritz telegraphed the plaintiff Green on September 28, 1922, "Cannot be in Boston before October Tenth"; and on October 24, 1922, wrote him the following letter, which he received: "My dear Sir; As I am tied up here on legal matters it will be impossible to state the exact date of my return about November 7th. Up to this writing you have not shown the Hundred Thousand. If you will show this with a Certified Check and protect the mortgages I will gladly do business. (Signed) M. E. Fritz" She returned to Boston on about November 7, 1922.

On the evidence the jury justifiably could find that, on about November 9, 1922, the plaintiff Green and Sullivan went to the hotel ready and able to pay for the property $450,000 — $100,000 in cash with the passing of the deed; assume the first mortgage; and give back a second mortgage of $200,000, payable $15,000 a year with interest at six per cent. They could find on the evidence that the plaintiffs at this time had not had Sullivan sign an agreement with the

defendant company and did not have a certified check for $100,000, nor $100,000 in cash; and they could both find that the plaintiffs did not, as the defendant claimed they did, admit on cross-examination that Miss Fritz in her conversations with Green, (agent for the plaintiffs) said "Mr. Green, I will sell that property if you will bring me a customer who will show me $100,000 in cash and who will satisfy me that he can protect the mortgages on that property." It sufficiently appears that the defendant refused to see or treat further with Sullivan or the plaintiffs. At the close of the evidence the judge refused to direct a verdict for the defendant. On submission of the case with instructions not excepted to, the jury found for the plaintiffs.

The defendant's argument, that a verdict should have been ordered as requested, is based upon the contention that the evidence established that the plaintiffs agreed, as a condition precedent, that their right to receive the agreed commission was dependent upon terms imposed by the defendant; "that the purchaser must produce, in cash or by certified check, one hundred thousand dollars ($100,000), and also must satisfy the defendant that he could protect the mortgages." There are two answers to this position, each of them sufficient if sound. First, on all the evidence, disregarding the testimony of Miss Fritz, as rightly could be done, the jury could find that the contract of employment was expressed completely by the evidence of Green, Sullivan, and other witnesses for the plaintiffs. And secondly, they could find on the defendant's thesis that that condition was fulfilled on the production of a customer who in a commercial sense was able, ready and willing to "show . . . in cash" or by a certified check $100,000 the moment the defendant was ready to pass title to the property. Such would be the usual concomitants of an ordinary bargain of sale; and the requirement, that the would-be purchaser should at all times carry in his pocket ready for immediate delivery cash or a certified check of $100,000, would be an extraordinary if not absurd requirement. It cannot be overlooked that the plaintiffs on September 26 notified the defendant that the customer Sullivan, well known and acceptable to the defendant, was

ready to pay $100,000 in cash, take the property at the purchase price, $450,000, and the balance over $100,000 on mortgages; that the defendant did not reject the offer or refuse to deal with the purchaser until October 24, when, for the first time, as the jury might find, the defendant demanded a showing of $100,000 and an ability to protect the mortgages.

The defendant next contends that all the essential terms of the ultimate passing of title were not determined when, on September 26, the plaintiffs produced Sullivan as a customer ready, able and willing to take the property at the agreed price. The contract governing the rights of the plaintiffs to a commission, as the jury might find it to be, does not turn upon the fact that a purchaser has been found and that every possible situation is agreed upon between the defendant and that purchaser which may arise before the conveyance becomes accomplished; but upon the question, Has a purchaser been produced who is ready, able, and willing to take the property upon the terms which the broker was authorized to offer to a customer as the basis of a final contract with the owner? *Woods* v. *Matthews*, 224 Mass. 577, upon which the defendant relies, is a case where certain terms of the contract were expressly left open for future consideration and determination, and is not an authority which supports the position of the defendant.

Without further consideration of the arguments of the defendant we think a case for the jury was presented, and that they could have found rightly that the commission was earned when the letter of September 26, 1922, was received by the defendant. *Klayman* v. *Silberstein*, 252 Mass. 275. *Walker* v. *Russell*, 240 Mass. 386, 390. *Green* v. *Levenson*, 241 Mass. 223. The exceptions in this regard must be overruled.

The evidence admitted in the cross-examination of Miss Fritz, to the effect that a church was about to be erected on a vacant lot opposite the hotel, was relevant to the motive which led the defendant to refuse to go forward with the sale, and its admission was within the discretion of the court.

*Exceptions overruled.*