JOSEPH SIMON *vs.* BENJAMIN LETTIERE & others.

Suffolk. November 9, 1926. — November 24, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & SANDERSON, JJ.

*Broker*, Commission. *Contract*, Implied. *Evidence*, Competency.

Counts in the declaration in an action of contract by a real estate broker against owners of certain real estate contained allegations that the defendants "employed the plaintiff as exclusive broker with the sole right to negotiate a sale of the real estate" and agreed to pay him "the usual commission therefor" if he "should obtain a purchaser for at least" a certain sum upon certain terms; "that the plaintiff did procure a purchaser for the said estate for" a price in excess of that named and "upon the terms mentioned, or while the plaintiff's said exclusive brokerage and sole right to sell were in existence the defendants made a sale of the said estate." There then followed allegations stating what the "usual commission" was and that the defendants owed the plaintiff $1,725. At the trial, it appeared that the property was listed with the plaintiff by the defendants for sale on stated terms, and that the amount of commission to be earned by him was $1,725; that the plaintiff procured and presented to one of the defendants, who represented the others, a customer ready, able, and willing to buy on the terms proposed by the defendants, but that the defendants were unable to fulfil the terms because a first mortgage upon the premises was overdue; that, later, on different terms, the defendants sold the property to the son-in-law of one of the former prospective purchasers who, through efforts of the plaintiff, had become interested in the property; and that, thereafter, the plaintiff presented his bill for a commission to the defendant who had acted for the others and who then admitted that a commission was owed the plaintiff in that amount, and later stated "that he was satisfied to pay the amount of the plaintiff's bill but his partners would not be satisfied." *Held*, that

(1) The allegations of the employment of the plaintiff as an exclusive agent to negotiate the sale of the premises set forth no cause of action

which sounded in damages, there being no consideration for the promise in the absence of complete performance by the plaintiff;

(2) If the allegations as to exclusive employment were eliminated from the counts, there would be left sufficient allegations of an offer by the defendants and of performance by the plaintiff, if proved, to warrant a verdict or finding for the plaintiff;

(3) Any objection to the effect that the count contained more than one cause of action should have been raised by demurrer: it was too late to raise it by exceptions after the verdict;

(4) The evidence warranted a finding that the plaintiff earned his commission by procuring a customer ready, able and willing to purchase the property on the terms stated by the defendants, and that he was entitled to the commission stated.

While, in an action by a real estate broker for commission, the plaintiff cannot recover in *quantum meruit* for services rendered in an unsuccessful attempt to fulfil the terms of the proposals by the defendant, if the plaintiff fully performs, he may sue at his election in the terms of the proposal or on the common count of *indebitatus assumpsit*, or on the count of *quantum meruit* if the terms of the proposal are fulfilled and the amount to be paid for the service is not fixed as one term of the offer.

In the action above described, the fact, that all parties endeavored unsuccessfully to make a new agreement to meet the situation which arose when the first mortgage was found to be overdue, did not affect the right of the plaintiff to his commission which was earned when he procured a customer ready, willing and able to take the property on the terms of the proposal given to him by the defendants.

At the trial of the action above described, testimony by the son-in-law of one of the prospective purchasers originally procured by the plaintiff, relating to negotiations leading to, and the making of the final sale to him, was *held* to have been admissible to show that the son-in-law was the representative of one of the original prospective purchasers, and also as a step in proof of the claim of the plaintiff that he was the efficient cause of the sale, to whomsoever it was made.

At the trial of the action above described, testimony as to a conversation between an attorney acting for the defendants and one who, at his request, had conducted with the first mortgagee negotiations as to the extension of the overdue mortgage which finally resulted in the sale being brought about with the customer whom the plaintiff had procured, was *held* to have been admissible, where it appeared that it was in the presence of the defendants and that they made no open dissent.

CONTRACT for a commission alleged to have been earned as a real estate broker. Writ dated May 19, 1923.

The declaration as amended contained five counts. In the first count the plaintiff alleged that the defendants "employed him to negotiate a sale of" certain real estate of theirs "and agreed to pay the plaintiff the usual commission therefor if the plaintiff should obtain a purchaser for the

same for at least the sum of $62,500, a part of which sum should remain on mortgages; that the plaintiff did procure a purchaser for the said estate for the price of $63,000 upon the terms mentioned," and that the defendants owed the plaintiff the usual commission, which was $1,725.

In the second count, the plaintiff alleged that the defendants "employed the plaintiff as exclusive broker with the sole right to negotiate a sale of the real estate" in question, "and agreed to pay the plaintiff the usual commission therefor if the plaintiff should obtain a purchaser for the same for at least the sum of $62,500, a part of which sum should remain on mortgages; that the plaintiff did procure a purchaser for the said estate for the price of $63,000 upon the terms mentioned, or while the plaintiff's said exclusive brokerage and sole right to sell were in existence the defendants made a sale of the said estate;" that the usual commission "in such case" was computed by the percentages stated in the third count, and that the defendants owed the plaintiff $1,725 and interest.

In the third count, the plaintiff alleged that "the defendants employed him to negotiate a sale of the real estate undertaking and agreeing to pay the plaintiff, as commission, a sum agreed, to wit: three and one half per centum up to and including $15,000 and then in excess thereof, two and one half per centum based upon the selling price of the said estate if the plaintiff should obtain a purchaser who was ready, able and willing to buy the same for at least the sum of $62,500 a part of which sum should remain on mortgages; that the plaintiff did procure a purchaser for the said estate for the price of $63,000, upon the terms mentioned; and that the defendants owe the plaintiff the sum of $1,725 and interest."

In the fourth count, the plaintiff alleged "that the defendants employed the plaintiff as exclusive broker with the sole right to negotiate a sale of the estate . . . undertaking and agreeing to pay the plaintiff as commission, a sum agreed, . . . [as stated in the third count] if the plaintiff should obtain a purchaser for the same for at least the sum of $62,500, a part of which sum should remain on mortgages;

that the plaintiff did procure a purchaser for the said estate for the price of $63,000 upon the terms mentioned, or while the plaintiff's exclusive brokerage and sole right to negotiate a sale were in existence the defendants made an actual sale of the said estate; and that the defendants owe the plaintiff the sum of $1,725 and interest."

The fifth count was for $1,725 on an account annexed for "services rendered in negotiating sale of" the premises in question.

The action was tried before *Brown*, J. Material evidence, exceptions by the defendants to the admission of evidence, and motions by the defendants at the close of the evidence, are described in the opinion. There was a verdict for the plaintiff in the sum of $1,898.52. The defendants alleged exceptions.

The case was submitted on briefs.

*S. Markell*, for the defendants.

*E. M. Dangel & L. E. Sherry*, for the plaintiff.

PIERCE, J. This is an action of contract pending in the Superior Court. The declaration contains five counts, all for the same cause of action. *Goodhue* v. *Hartford Fire Ins. Co.* 175 Mass. 187, 188. At the close of the evidence, the defendants, by a written motion, requested that a general verdict be directed for the defendants; and further requested that a verdict for the defendants be directed on each of the five counts. These motions were severally denied, and the case comes here on the defendants' exceptions saved to the refusals so to rule and instruct.

The evidence received at the trial, in its aspect most favorable to the several contentions of the plaintiff, set out in the counts of his declarations, warranted the jury in finding the material facts in substance to be as follows. The plaintiff, on March 12, 1923, was a merchandise and real estate broker; the defendants were partners, engaged in the buying and selling of real estate. On that day the defendants determined to sell their real estate, described in the declaration, and the defendant Cohen was authorized to act for the partnership in engaging a broker to sell the premises in question. In pursuance of his authority, Cohen em-

ployed and promised to pay the plaintiff the usual and ordinary broker's commission to procure a customer for the property for the sum of $62,500 inclusive of mortgages, upon the following terms: "There was to remain upon the property a first mortgage covering both parcels of $40,000, held by a bank, bearing interest at six per cent yearly, payable semiannually, and which had three years to run; also there were to remain two second mortgages upon which the aggregate balances of principals were $7,800; bearing interest at six per cent yearly, one mortgage would expire in about eight months and the other mortgage in about one year; and the balance of the purchase price of $14,700 was to be paid in cash or at the buyer's option a third mortgage of $4,000 for two years bearing interest at six per cent yearly, payable semiannually and the balance in cash."

"It was agreed that the usual broker's commission for the sale of the premises in question would be three and one half per cent up to and including the first $15,000 of the purchase price and then two and one half per cent upon the purchase price in excess thereof." "The plaintiff told . . . Cohen what the amount of his commission would be and later computed the amount of his commission on such a sale in the defendants' presence, showed the figure to them and they said they were satisfied."

The jury would be warranted in making the further finding that on the same March 12, 1923, the defendants gave the plaintiff the exclusive right for three months to sell this property; that "the defendants agreed that only the plaintiff would have the right to sell the property . . . within that period of time," and "that even the defendants as owners would not sell the property within that period of time"; that "all customers would be referred to the plaintiff and if the defendants or any broker other than the plaintiff sold the property to anybody they would have to pay the plaintiff the full commission." The plaintiff said the commission would be $1,725, to which the defendants agreed.

Prior to April 7, 1923, the plaintiff procured Samuel Alexander and Jacob Silverman and introduced them as cus-

tomers for the defendants' property. "These customers were ready, able and willing to purchase the defendants' property for cash above the first and second mortgages for the sum of $63,000 and upon the terms given by the defendants to the plaintiff, provided the first mortgage had three years to run, and [they] so informed the defendants."

On April 7, 1923, all parties met at the office of an attorney at law "to draw and execute the written agreement of sale." At this conference it was discovered by the attorney at law that the first mortgage did not have three years to run but had matured and was then due; and "although the customers were ready, able and willing to execute the agreement of sale upon the terms in accordance with which the plaintiff was authorized to offer the property . . . the agreement of sale was not then drawn nor executed because of the actual state of the defendants' title so far as it related to the maturity of said first mortgage." Thereafter there were many conferences between the customers, the plaintiff and the defendants, but nothing came of them in the way of a purchase and sale of the property.

When the plaintiff told Silverman, one of the customers above referred to, of the property in question, Silverman said in substance that he knew a person, his son-in-law, Levitan, "who was looking to buy just such a piece of property." The plaintiff asked Silverman "where he could communicate with that person," and asked Silverman "to communicate with Levitan and tell him of the fact that the defendants' property was for sale and to give Levitan, for the plaintiff, a copy of the written statement of the defendants' property showing the terms of sale, income and expense of the defendants' property, the original written statement of which had previously been given by the defendants to the plaintiff, and the plaintiff's business card. . . . Silverman took the statement and cards and promised to do so for the plaintiff." Later, at the home of Silverman (the father-in-law of Levitan), in the presence of Jacob Silverman, Samuel Alexander, and of Samuel Silverman (an attorney at law and brother-in-law of Levitan), the

written statement "was read and discussed in Levitan's presence and examined by Levitan, who computed the profit as shown by the statement, and the plaintiff's cards were given by Jacob Silverman to Levitan; . . . on May 2, 1923, Jacob Silverman took Levitan to the defendants and within twenty minutes the defendants, Jacob Silverman, and Levitan went to the office of said attorney at law, Samuel Silverman, . . . where said attorney drew and Levitan and the defendants signed a written agreement to purchase the defendant's property for $62,600, subject to the said first mortgage held by the Home Savings Bank, which was in its same state, namely: was matured, overdue and open and as part of the purchase price the defendants were to take back a standing third mortgage." Levitan completed the purchase on May 29, 1923.

After the sale to Levitan the plaintiff said to the defendant Cohen, who "had authority to act for the partnership," "You owe me a commission," and Cohen said, "Yes, how much is it?" The plaintiff then presented his bill for services for $1,725 to the defendants, and Cohen said that they did not owe the plaintiff the amount of the bill; and further said, "Why so much, I won't pay so much." Later Cohen said "that he was satisfied to pay the amount of the plaintiff's bill but his partners would not be satisfied."

The allegations in the counts numbered 2 and 4 of the declaration, of the employment of the plaintiff as an exclusive agent to negotiate the sale of the premises, set forth no cause of action which sounds in damages. These counts contain no further allegation that the promises of the defendants were supported by any consideration. Such a statement, declaration or promise, made by the defendants in connection with a proposal to pay a commission upon the accomplishment of a fact, does not prevent or render illegal the withdrawal or change in the terms of the proposal by the offerer at any time before a contract has arisen, through the complete performance and fulfilment of the thing to be done or accomplished by the offeree. *Des Rivieres* v. *Sullivan*, 247 Mass. 443. *Elliott* v. *Kazajian*, 255 Mass. 459. *Walsh* v. *Grant*, 256 Mass. 555. Striking these

allegations from counts 2 and 4 there are left sufficient allegations of an offer by the defendants and of performance by the plaintiff, if proved, to warrant a verdict or finding for the plaintiff. If obnoxious to the objection that a single count should not state more than one cause of action, the error should have been raised by demurrer. *Washington* v. *Eames,* 6 Allen, 417. *Downs* v. *Hawley,* 112 Mass. 237.

As to count numbered 5, it is clear that an offeree cannot recover in *quantum meruit* for services rendered in an attempt to fulfil the terms of a proposal, *Cadigan* v. *Crabtree,* 179 Mass. 474, 481; and it is equally plain that following full performance the offeree may sue at his election in the terms of the proposal or on the common count of *indebitatus assumpsit, Lovell* v. *Earle,* 127 Mass. 546, *Wheelock* v. *Zevitas,* 229 Mass. 167, 170; or on the count of *quantum meruit* if the terms of the proposal are fulfilled and the amount to be paid for the service is not fixed as one term of the offer. *Altman* v. *Goodman,* 255 Mass. 41. The general motion for a directed verdict was refused rightly.

The facts above recited warranted a finding that the plaintiff procured customers who were ready, willing and able to purchase the property of the defendants upon the terms given by the defendants to the plaintiff, and that they so informed the defendants. The fact, that all parties endeavored unsuccessfully to make a new agreement to meet the situation which arose when the first mortgage was found to be overdue and had not three years to run, does not affect the right of the plaintiff to his commission which was earned when he procured customers ready, willing and able to take the property on the terms of the proposal given to him by the defendants. *Buono* v. *Cody,* 251 Mass. 286. *Casey* v. *Fritz Carlton Hotel Co.* 254 Mass. 223.

The evidence of Levitan, called by the plaintiff, was admissible in proof of the claim of the plaintiff that, in the sale to Levitan, he was the representative of Jacob Silverman, one of the two persons whom the plaintiff had procured as customers to buy the property of the defendants on the defendants' terms; as also, a step in proof of the claim of the

plaintiff that he was the efficient cause of the sale to whomsoever made, Levitan or Silverman.

The evidence in the case warranted a finding that Samuel Silverman, at the time of the trial the defendants' attorney, at the meeting of the defendants and the customers on April 7, 1923, to draw the agreement of sale, was for that purpose the accepted representative of all parties; that following his discovery that the first mortgage was overdue, he undertook in that capacity to interview the officials of the bank, the holder of the first mortgage; that the defendant Cohen told one Naar, who was known to the defendants to be assisting the plaintiff in effecting a sale of the defendants' property, to go to one Lazarus and have him get a letter from the first mortgagee bank to the effect that, upon payment to the bank of $4,000 in reduction of the first mortgage, the bank would extend the remaining balance of $36,000 for three years; that Naar should report to attorney Silverman the result of his conference with Lazarus, and, if Lazarus should obtain any letter confirming the agreement of extension, that Naar should give such letter to Samuel Silverman. It was in evidence that Naar obtained the letter and gave it to Samuel Silverman.

It could be found upon the evidence that a second conference of the parties was held at the office of Silverman after he had received the letter obtained by Naar, and that at that interview an agreement of purchase was arrived at, based upon the price of $63,000, the reduction of the first mortgage by $4,000, and a third mortgage to the defendants to cover the sum of $36,000 secured by the bank's first mortgage; that the conference adjourned with "the understanding that the defendants and their wives would call at the office of Silverman, their attorney, and sign the agreement the following Monday."

In connection with the second conference the plaintiff offered and the judge received, subject to the exception of the defendants, a conversation between Silverman, the attorney, and the witness Naar. This conversation on the reported evidence could have been found to have been

had in the presence of the defendants, and it could have been found that they made no open dissent.

It results that the exceptions to the admission of evidence and to the several refusals to direct verdicts must be overruled.

*Exceptions overruled.*