MYRA HARVEY *vs.* THE FIRST NATIONAL BANK OF BOSTON.

Suffolk.    December 31, 1929. — January 29, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Broker,* Commission. *Agency,* Scope of authority. *National Bank. Executor and Administrator. Contract,* What constitutes, Validity. *Evidence,* Of agency.

A national bank was appointed executor under a will giving it power to sell the land belonging to the estate. At the trial of an action against the bank by a real estate broker for a commission alleged to have been earned in procuring a customer for a part of such land, there was evidence that, shortly after the defendant's appointment, the plaintiff,

acting on instructions from a trust officer of the defendant, had pro cured a purchaser for another part of the land, whereupon that transaction had been consummated and the plaintiff had been paid a commission by the defendant; that later the same trust officer had stated to the plaintiff that the defendant wanted to dispose of the remainder of the land and that the plaintiff "was to bring offers to the bank"; that the trust officer expected to pay a commission to the plaintiff if he were successful in procuring a purchaser; that the trust department was willing that the plaintiff should secure the assistance of others in selling the land; that the plaintiff associated another broker with himself; that they procured an offer which, the trust officer stated to them, was unsatisfactory; that the trust officer thereupon stated to them the terms upon which the defendant would sell the land; that the plaintiff procured a customer ready, able and willing to purchase on those terms, one of which was that the defendant should take back a mortgage in a sum greater than fifty per cent of the value of the land; that the second broker communicated the customer's offer to the trust officer, who then for the first time stated to them that he must submit the offer to the life beneficiary under the will; that the plaintiff and the second broker subsequently were informed that the life beneficiary had decided to take over the property himself; that the trust officer's duties were the general fiduciary duties incidental to the administration of estates and trusts by the defendant; that, in connection with such duties, he had real estate under his control; and that, when real estate held by the defendant as a fiduciary was to be sold, he "engaged brokers." *Held,* that

(1) Findings were warranted that the trust officer for the defendant hired the plaintiff to procure a customer ready, able and willing to buy the land on certain terms, and agreed to pay the plaintiff a commission if he were successful in doing so; and that the plaintiff secured such a customer and informed the trust officer thereof before the plaintiff's authority was revoked by the defendant;

(2) A finding was warranted that it was within the scope of the trust officer's duties to hire the plaintiff to sell the land and to agree to pay him a commission;

(3) The contract with the plaintiff was not *ultra vires* the defendant: as executor, it possessed all the powers essential to the proper performance of its duties under the will, and the power to hire and compensate brokers in connection with the sale of real estate was incidental to those powers;

(4) The fact, that the terms upon which the plaintiff procured the customer required the defendant as executor to take back a mortgage in a sum in excess of fifty per cent of the value of the land, did not render the contract between the plaintiff and the defendant illegal in that it violated 39 U. S. Sts. at Large, 754, as amended: that statute was not applicable;

(5) A verdict for the plaintiff was warranted.

CONTRACT by a real estate broker for a commission. Writ dated June 8, 1928.

The first count of the declaration contained allegations that the defendant employed the plaintiff as a broker to sell certain real estate on certain terms and agreed to pay her $3,775 for her services; that she performed her part of the agreement; and that the defendant failed to pay her the agreed commission. The second count was substantially the same as the first, except that the plaintiff therein alleged that the defendant agreed to pay her a reasonable sum for her services. The third count was upon an account annexed.

At the trial of the action in the Superior Court before *Morton*, J., the witness Andrews testified that he was familiar with the usual commissions paid to brokers; that he did not "exactly recall what the percentages are now"; and that that was the commission he had in mind. Other material evidence is stated in the opinion. The judge denied a motion by the defendant that a verdict be ordered in its favor. The jury found for the plaintiff in the sum of $4,105. The defendant alleged an exception.

The case was submitted on briefs.

*A. L. Taylor & J. W. Flett*, for the defendant.

*W. P. Murray, E. M. Murray, & E. Quinlan*, for the plaintiff.

PIERCE, J. This is an action of contract to recover compensation for alleged services in procuring a purchaser for certain real estate owned by the defendant as executor under the will of Lucian J. Fosdick, late of Boston, Massachusetts, deceased. The answer is a general denial and payment. At the close of the evidence the defendant presented and the judge denied a motion for a directed verdict. The jury thereafter found for the plaintiff and the case is before us on exceptions to the denial of the defendant's motion.

All evidence material to the single issue as thus raised is contained in the bill of exceptions. On this evidence the facts, as they warrantably could have been found by the jury, are in substance as follow: At all times material to the issue presented the defendant was executor of the will of one Lucian J. Fosdick and under the terms of that will had full power to dispose of and sell the real estate. The

property here involved, which the defendant was desirous of selling, consisted of fourteen parcels of land with buildings thereon.   The plaintiff had charge of the property for Fosdick for about eight years of his life, and after his death for the defendant for fifteen months.   Soon after Fosdick's death, the plaintiff procured a customer for the part of the property on Linden Street.   The price offered was "thought reasonable," the sale was consummated, the defendant "delivering the deed and receiving the consideration and paying . . . [the plaintiff] a commission on the sale of that property."

Henry N. Andrews testified, and upon his testimony the jury could find, that for twelve years Andrews had been associated with the defendant as a trust officer; that his duties were the general duties incident to the administration of estates and trusts; that the duties which he performed under trust estates depended upon the terms of the will under which the defendant operated; that these included all the various details incident to administration of estates, administration of trusts, voluntary trusts, life insurance trusts and fiduciary matters in general; that in connection with these duties he had certain real estate under his control which included the property here in question.   On his testimony the jury warrantably could further find that "where real estate was being sold the witness, on behalf of the trustee, engaged brokers."   On July 28, 1927, Andrews as "trust officer" sent the plaintiff a letter authorizing her to make sale of the Linden Street property, which, as above stated, was subsequently deeded by the defendant to her customer.   After that sale Andrews had a conversation with the plaintiff in reference to selling the remainder of the property, stating that "we wanted to dispose of the property"; and "there was talk about her getting a customer." On his testimony the jury could further find "that there was no question but that his department was perfectly willing that Mrs. Harvey [the plaintiff] should employ the assistance of others in negotiating the sale of the properties"; that "she was to bring offers to the bank"; and "that there was no question that in the event of the securing of a cus-

tomer, he expected to make payment of a commission to Mrs. Harvey."

The testimony of the plaintiff and that of Edward G. Williams, who had become associated with her in the marketing of this property, warranted the further finding by the jury that in the fall of 1927 the plaintiff secured an offer for the property and forwarded a copy of the offer to Andrews by letter dated December 20, 1927; that Andrews informed her and Williams, who had told him of the terms of the offer, that the offer was unsatisfactory with respect to the total purchase price and the amount of the initial cash payment, but that he would sell the Fosdick property for $145,000, of which $20,000 was to be paid in cash and the balance of $125,000 was to be secured by a mortgage running for five years at six per cent payable $5,000 a year; that thereafter she obtained a customer, one Thomas Matthews, who made an offer in compliance with these terms; that the offer was communicated by Williams to Andrews, who then for the first time stated that he must submit the proposition to Mrs. Fosdick, the widow of the testator, and to her attorney; and that the plaintiff and Williams were later informed that Mrs. Fosdick had decided to take the property herself. Matthews testified that he made the offer and was ready, able and willing to purchase the property on the terms proposed, which he stated. No evidence is offered to prove, nor is it contended, that Matthews did not make the offer in the terms of the defendant's conditions, or that he was not able and willing to abide by his acceptance of the alleged terms of sale; and there is no evidence that the authority of the plaintiff to offer the property for sale on the prescribed terms was withdrawn before Matthews was procured as a customer and his offer communicated to the defendant.

We consider the argument of the defendant in support of its motion in the order the points are presented in its brief. "(a) There is no evidence of a consummated contract between the plaintiff and the defendant." Assuming Andrews was authorized to procure the services of a broker to sell the property, and assuming the defendant was willing

the plaintiff should employ Williams as an associate in the marketing of the property, the evidence is plenary that Andrews on behalf of the defendant authorized the plaintiff or her associate to procure a customer for the property upon the terms prescribed by Andrews, and agreed to pay her a commission in the event of her securing a customer who was ready, willing and able to perform; and it is inescapable that the plaintiff did secure such a customer and did inform the defendant of that fact before her authority was in any degree revoked.   *Casey* v. *Fritz Carlton Hotel Co.* 254 Mass. 223, 228.

"(b) The plaintiff has not proved that she dealt with an agent of the defendant or that the alleged agent acted within the scope of his authority in making the alleged contract." It is plain the evidence of Andrews as to the nature of his duties as a trust officer of the defendant was admissible, and, admitted, was sufficient to establish his agency to sell this property, employ brokers, and agree that compensation should be paid if a purchaser for the property were secured.   *Gould* v. *Norfolk Lead Co.* 9 Cush. 338, 342.

"(c) The defendant is a national banking corporation organized under the laws of the United States and the alleged contract was beyond the powers conferred upon it by statute." The defendant acting as executor is assumed to have exercised the right to act as executor with the permit of the Federal Reserve Board.   40 U. S. Sts. at Large, 968–969, § 2, amending section 11 (k) of the Federal Reserve Act, 38 U. S. Sts. at Large, 262.   As such executor it was clothed with all powers which were essential to the performance of its duties under the will of its testator and to the final administration of the estate.   It is obvious the defendant must exercise its duties and powers through agents and servants, and that in the sale of this property it had the incidental right to procure a purchaser through the aid of brokers, and to pay for such service.

The fact that the terms of sale of the property contemplated that the defendant should take back a mortgage in excess of fifty per cent of the actual value of the property

did not make the contract with the plaintiff illegal in that it would be in violation of 39 U. S. Sts. at Large, 754, which, as amended by Act of Congress of February 25, 1927, c. 191, § 16 (44 U. S. Sts. at Large, 1232), reads in part: "Any national banking association may make loans secured by first lien upon improved real estate . . . . The amount of any such loan shall not exceed 50 per centum of the actual value of the real estate offered for security . . . ." On the facts here disclosed the statute has no application to credits given for property sold by a national bank upon which a mortgage is taken back by way of security.

*Exceptions overruled.*