# DECISIONS

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

DIRECTOR OF LIQUIDATIONS *vs.* MARY E. WOOD & others.

Suffolk. February 6, 1940. — April 23, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Trust Company*, In liquidation, Stockholder, As trustee of its own stock. *Interest.*

The executor of the will of one who had entered into an indenture of trust with a trust company under whose provisions he received the income during his life from the trust fund and others benefited from it after his death, was not liable as a shareholder of the company under G. L. (Ter. Ed.) c. 172, § 24, as amended, where it appeared that among securities included in the trust were shares of stock of the company, transfer of title to which to the company as trustee he had made every effort to accomplish by delivery to it of the certificates with a duly executed assignment and power to transfer, although, without his knowledge, no formal transfer of the stock had been made on the books of the company.

The provisions of § 39 of G. L. (Ter. Ed.) c. 172 do not make it unlawful for a trust company to receive shares of its own stock as trustee.

Upon determination in favor of the defendant of a suit by the liquidator of a trust company to enforce a stockholder's liability, the defendant was entitled to receive from the liquidator the amount of a dividend, declared upon the defendant's deposit in the savings department of the company and withheld by the liquidator pending determination of the defendant's liability, together with interest thereon at six per cent from the date of its declaration.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 27, 1935.

VOL. 306.                    1

The case was reserved and reported by *Dolan*, J.

*I. Cohen*, (*E. J. Flavin* with him,) for the plaintiff.

*Joseph P. Sullivan*, for State Street Trust Company and another, executors.

Cox, J.  This is a suit in equity brought by the commissioner of banks in possession of the property and business of the Exchange Trust Company, hereinafter referred to as the trust company, against such trust company and certain alleged stockholders thereof, under G. L. (Ter. Ed.) c. 167, § 24 (see St. 1933, c. 41, § 4), to enforce against them the liability imposed on the stockholders.  (G. L. [Ter. Ed.] c. 172, § 24.  See St. 1934, c. 349, § 14; St. 1937, c. 248.) The director of liquidations was substituted as plaintiff by amendment.  See St. 1939, c. 515.  We are not concerned with any of the defendants named in the bill except the State Street Trust Company and John E. Gilcreast, as they are coexecutors of the will of John F. Moore, deceased. The case is reported to this court by a single justice upon the bill, answer, the counterclaim of the defendants, and a statement of agreed facts which provides that any court shall be at liberty to draw from the agreed facts and documents in the case any inferences of fact that it would have authority to draw upon a case stated under G. L. (Ter. Ed.) c. 231, § 126.  See *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 108–109.  The acts of the commissioner of banks in taking possession of the trust company, or in determining the necessity of enforcing the individual liability of stockholders therein, are not questioned.  Two issues only are presented: (1) are the defendants liable as of April 25, 1932, under the provisions of G. L. (Ter. Ed.) c. 172, § 24, which provides, in substance, that the stockholders of such a corporation as the trust company shall be personally liable, equally and ratably, and not one for another, for all the contracts, debts and engagements of the corporation to the amount of their stock therein at par value thereof in addition to the amount invested in such shares; and (2) is the plaintiff liable on the defendants' counterclaim?

John F. Moore, the defendants' testator, on or about April 7, 1920, became the owner of twenty shares of the capital stock of the trust company and a certificate therefor was duly issued to him. About June 28, 1927, he became the owner of five additional shares and a certificate duly issued. About June 6, 1928, he entered into an indenture of trust with the trust company, by the terms of which he was to receive the income of the trust funds during his life, and, upon his decease, the income was to be paid to various persons therein named during their lives and, upon their deaths, their respective shares of the remainder were to be distributed. In accordance with the terms of this indenture, Moore transferred and assigned irrevocably in trust to the trust company certain securities, including the twenty-five shares of the capital stock. "As part of said transaction . . . Moore delivered to the officers of the Exchange Trust Company for transfer said certificates . . . ." together with a certain instrument "signed by him, purporting to transfer and assign the twenty-five (25) shares . . . and authorizing the transfer of said shares of capital stock on the books of the" trust company. This assignment did not contain the name of the transferee or of the attorney empowered to transfer the stock. It correctly described the shares by number and also gave the correct numbers of the two certificates. No transfer of these certificates was made on the books of the trust company, and no new certificate or certificates were issued. After the delivery of the instrument of transfer, the dividend checks on the shares were made payable to "John F. Moore, c/o Trust Dept., Exchange Trust Company, Boston, Mass." These checks were not indorsed by Moore and were not delivered to him, but in each instance they were indorsed by the trust company as follows: "John F. Moore Trust Exchange Trust Company, Trustee John E. Gilcreast Ass't Sec'y" or "John F. Moore Exchange Trust Company, Trustee John E. Gilcreast, Ass't Sec'y," and these dividend checks were deposited to the account of the trust company, as trustee, under the indenture of trust through which Moore continued to receive the income. At the

time the commissioner of banks took possession, on April 25, 1932, the trust company still held the certificates of stock in question and the instrument of assignment as part of the corpus of the trust under the indenture. Shortly thereafter the trust company resigned as trustee, and one of the defendants, the State Street Trust Company, was appointed succeeding trustee. Moore died on December 29, 1932. The account of the trust company, filed on January 23, 1934, lists the shares of stock in question as having been received from Moore and as having been delivered to the succeeding trustee. The inventory of the executors of Moore's will did not list said shares; the inventory of the State Street Trust Company, as trustee, did.

1. Apart from the question of any transfer of the stock on the books of the trust company, Moore did all that was required to transfer title to the stock to his trustee when he delivered the certificates together with a written assignment of them. G. L. (Ter. Ed.) c. 155, § 27 (b). *Edgerly* v. *First National Bank of Boston*, 292 Mass. 181, 184–185. *DeBoer* v. *Anthony*, 300 Mass. 403, 411–412. The trust company had a trust department duly established under the provisions of §§ 49–59, inclusive, of G. L. (Ter. Ed.) c. 172, and had authority to act as trustee under the indenture of trust (§ 52). By § 53 it was empowered to invest the funds or assets of the trust in the same way, to the same extent, and under the same restrictions as an individual holding a similar position might invest them. But, under the provisions of § 59, the settlor of the trust could direct whether money or property deposited under it should be held and invested separately or invested in the general trust fund of the corporation; and the corporation, acting as trustee, would be governed by the directions contained in the trust instrument. The trust indenture gave the trust company broad powers as to the sale or transfer of the trust estate and the investment and reinvestment of its principal and accumulations of income as it "may deem advisable and proper." It is true that under the provisions of § 39 of said c. 172, a trust company may not be the purchaser

or holder of shares of its own capital stock, *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 253 Mass. 205, 227, but we are of opinion that this did not prevent it from receiving as a part of the trust assets the shares of stock in question. See *Harvey* v. *First National Bank of Boston*, 270 Mass. 286, 291–292.

It is the general rule that one who allows stock to stand in his name on the books of a banking corporation is liable for statutory assessments and he will not be relieved from liability, notwithstanding the fact that he may have made a complete transfer to another person, unless the stock has been transferred on the books of the corporation. *Apsey* v. *Whittemore*, 199 Mass. 65, 69. *Whitney* v. *Butler*, 118 U. S. 655. In this Commonwealth the owner of stock of a trust company, on the date the commissioner of banks takes possession of its property and business, with exceptions not here material, is subject to the statutory liability, whether or not the stock stands in his name on the books of the company. And the fact that stock stands on the books of the company in the name of a person is *prima facie* evidence that such person is the owner thereof, and the burden of proving that he is not rests upon him. "And an individual once the owner of stock of a trust company and registered as such on its books cannot escape the stockholders' liability incident to ownership of such stock without showing that before the significant date he transferred ownership thereof to someone else (*Commissioner of Banks* v. *Tremont Trust Co.* 259 Mass. 162, 176) and performed the duty incumbent on him of securing the transfer of such stock on the books of the trust company or at least of doing all he could 'to divest himself of the indicia of title' thereto." *Commissioner of Banks* v. *Waltham Trust Co.* 293 Mass. 62, 65, and cases cited. But there is a well recognized exception to the general rule whereby, if the stockholder has done everything which a reasonably prudent business man would do to divest himself of the indicia of title to the shares, but his name remains upon the books of the corporation through no fault of his own, he is not chargeable as a stockholder. *Whitney* v. *Butler*, 118 U. S. 655. *Matteson* v. *Dent*, 176

U. S. 521, 531. *Earle* v. *Carson,* 188 U. S. 42, 52–53. 45 Am. L. R. 137. 104 Am. L. R. 638, 643. As was said by Rugg, C.J., in *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 253 Mass. 205, at page 227: "Delivery of a certificate to the officers of a bank for transfer, where the original holder has done all he can to divest himself of the indicia of title, and where the failure to issue the new certificate in the name of the new owner is wholly the fault of the bank or its officers, has been held to exonerate the original owner in case of a genuine sale." *Commissioner of Banks* v. *Waltham Trust Co.* 293 Mass. 62, 65. See *Apsey* v. *Whittemore* 199 Mass. 65, affirmed *sub nomine Apsey* v. *Kimball,* 221 U. S. 514. Compare *Superintendent of Banks of New York* v. *Moors,* 294 Mass. 518; *Friede* v. *Mackey,* 298 Mass. 193.

We are of opinion that the correct interpretation of the agreed facts, and the inferences to be drawn therefrom, bring the defendants within the exception to the general rule. As already stated, it appears that the certificates were duly assigned, transferred, and delivered to the trust company as trustee, and also that, as a part of this transaction, Moore delivered the certificates to the officers of the trust company for transfer together with a separate assignment of them which authorized their transfer on the books of the company. We think that the words "for transfer" mean for transfer on the books of the trust company. There is no suggestion of any attempt on the part of Moore to evade liability as a stockholder. He delivered the certificates himself. He had a right to have the transfer made and did all that a reasonable man was required to do as preliminary to such transfer. Nothing remained to be done except for the officer of the bank to make the proper transfer upon its books. So far as the record shows, there was nothing to raise a doubt in Moore's mind that the transfer would be made, and there is nothing in what took place thereafter to apprise him of the fact that it had not been made. He was entitled to rely to a reasonable extent upon the assumption that his request, which was not only reasonable, but also an incident to the routine business of the trust company, would be carried out. It cannot be

said that he should have insisted upon seeing with his own eyes that the transfer was actually made. The case is distinguishable from *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 253 Mass. 205, where, at page 227, it is pointed out that the delivery by the defendant. Berman of his certificate of stock was not to the bank or its officers for the purpose of transfer.

2. When the commissioner of banks took possession of the property and business of the trust company on April 25, 1932, Moore had on deposit in the savings department a substantial sum of money. His executors duly filed a proof of claim, which was allowed by the commissioner. In December, 1933, a dividend of fifty per cent on all deposits in the savings department was declared by the commissioner. Instead of paying fifty per cent of the defendants' claim that had been allowed, the commissioner withheld, and is still withholding, $3,000 under claim of an alleged lien for the purpose of covering the alleged stockholders' liability of Moore, or of his estate, on account of the twenty-five shares of stock standing in his name on the books of the trust company. The dividend was paid on or about December 26, 1933. The defendants' counterclaim is for this $3,000, together with interest from December 26, 1933. (Rule 32 of the Superior Court [1932]). The defendants are entitled to $3,000 which, it is assumed, they would have received on December 26, 1933, were it not for these proceedings. It does not appear that when the payment of the dividend was authorized (see G. L. [Ter. Ed.] c. 167, § 31) any authorization was asked for, or given, to withhold the $3,000 in question. It is a general rule that the right of a creditor to interest cannot extend beyond the date when the commissioner of banks takes possession of the trust company. *Augello* v. *Hanover Trust Co.* 253 Mass. 160, 168, and cases cited. The rule is founded upon the fundamental principle of equality of treatment among all creditors of the same class, and, as was said in *Cosmopolitan Trust Co.* v. *Suffolk Knitting Mills*, 247 Mass. 530, at page 537: "This principle is of paramount importance." But to deprive the defendants in the case at bar of interest

upon the unpaid balance of their dividend would not amount to equality of treatment. It must be assumed that the other creditors received their dividends in December, 1933, and have had the use of the money that was paid to them. It appears in the agreed facts that the fifty per cent dividend was declared. It is assumed that by this is meant that in accordance with the provisions of G. L. (Ter. Ed.) c. 167, § 31, the commissioner of banks was authorized and directed by this court to declare such dividend, and that the defendants were among the persons to whom the commissioner of banks was directed to pay. There would be force in the contention, if it were made, that the case at bar is distinguishable from those in which the interest allowed is payable out of the pocket of one of the parties to the action. Here the interest payment must be borne by all creditors of the same class who have proved claims, provided there are funds of the trust company in the possession of the plaintiff out of which payment can be made. To state this proposition, however, is but to demonstrate the justice of allowing the defendants interest. The plaintiff (then the commissioner of banks), in seeking to hold the defendants liable as stockholders, was acting for the benefit of the creditors. In order to insure the collection of any sum that might be awarded to him, he withheld money otherwise due the defendants. If he had succeeded in his suit, he would have been entitled to interest and all to the advantage of the creditors. But he failed, and if there is any hardship to the creditors by reason of requiring the plaintiff to pay interest to the defendants, it does not meet the fact that the defendants, through no fault of their own, have been deprived of the use of the money that should have been paid to them, as it now appears, when the other creditors received their dividends. We are of opinion that the defendants are fairly and equitably entitled to interest, which a majority of the court think should be at the rate of six per cent. *Armstrong* v. *American Exchange National Bank of Chicago*, 133 U. S. 433, 470. *Malcomson* v. *Wappoo Mills*, 99 Fed. 633. *Dunnagan* v. *Best*, 59 Fed. (2d) 795, 796. *Douglass* v. *Thurston County*, 86 Fed. (2d) 899, 910.

*Ticonic National Bank* v. *Sprague,* 303 U. S. 406, 411. See *Williams* v. *American Bank,* 4 Met. 317, 320–322; *Schaffer* v. *Hotel & Railroad News Co.* 266 Mass. 276, 278, and cases cited; *Ratner* v. *Hill,* 270 Mass. 249, 253.

3. The result is that a decree is to be entered dismissing the bill and giving relief to the defendants upon their counterclaim by ordering payment to them of $3,000, together with interest thereon at the rate of six per cent per annum from December 26, 1933, with costs to the defendants.

*Ordered accordingly.*