BARRON, J. (Putnam, C. J., and Keniston, J.)
This is an action of contract in which the plaintiff seeks to recover compensation for services rendered in connection with the sale of the defendant’s restaurant business under the terms of a written contract.
At the trial there was evidence tending to show that on July 29, 1940, upon which day the defendant owned a certain restaurant business, the plaintiff signed and delivered to the defendant, and the defendant in writing accepted, a- certain written instrument, pertinent parts of which are as follows:
“It is understood that I shall have the exclusive right to *48 sell this business for a period of 90 (ninety) days from date, and there shall be no compensation paid me unless the business is sold. Should the business be sold, you are to pay me the sum of 10% (ten per cent) of the selling price for my services.”
The Court found for the defendant and made the following finding of facts:
“I find that the defendant accepted the plaintiff’s written promise or agreement to act as her exclusive agent for a period of ninety days for the purpose of obtaining a customer for the purchase of her restaurant business, and that within said ninety days the defendant sold said business to a customer obtained by herself.” and ruled as follows:
“I rule that the plaintiff’s written promise constituted a unilateral contract; that in accepting the same the defendant did not preclude herself from selling said business within said ninety days to a customer obtained by herself and that the sale of said business made by her revoked the plaintiff’s authority to act as her exclúsive agent in the premises.”
The Court refused to rule as requested by the plaintiff, in effect that (1) the agreement herein referred to was a bilateral contract; (2) that the defendant did not have the right to revoke the authority given to the plaintiff within the ninety days; and (3) that the plaintiff could recover full compensation for the sale made by the defendant.
It is obvious that unless a bilateral contract was found, establishing mutual obligations upon each party, that the defendant would have the right to revoke the authority given to the plaintiff, and that the plaintiff could not recover any compensation. Under our Massachusetts decisions, the trial justice was correct in ruling that the memorandum herein referred to was a unilateral contract, and it therefore follows that his refusal to rule as requested on two and three were correct.
“It is a general rule that by employing a broker to secure a customer, the principal, in the absence of an agreement to the contrary, has the right to revoke the appointment at any time before performance and make the sale himself.” Cadigan v. Crabtree, 186 Mass. 7. Elliott v. Kazagian, 255 Mass. 459. Walsh v. Grant, 256 Mass. 555. ‘ The right of the principal to do that which he Has empowered his agent to do is an implied condition of every agency. Davis v. Van Tassel, 107 N. Y. Supp. 910.
“A principal may sell in person, other brokers may be employed, and the reward is to the diligent.” Mechem, Agency, 2nd ed., s. 2450. Does^an agreement, however, which purports to give to the broker exclusive right to sell within a limited time take from the principal his right to make a sale himself within said period? Is this an “agreement to the contrary,” as stated in the general rule? Distinction has been made in various jurisdictions between the conferring of an exclusive agency and the *49 conferring of an exclusive right. Where an exclusive agency is given, it is generally conceded that a principal binds himself not to sell through other agents, but does not thereby relinquish his own right to sell. A sale by the owner to a customer.he has himself procured revokes the authority of the agent. Des Rivieres v. Sullivan, 247 Mass. 443. Rowe v. Koutrouba, 263 Mass. 493. 10 A. L. R. 816.
An exclusive right to sell has, however, been interpreted in many jurisdictions as divesting the principal of his right to sell. The owner in such instance agrees not only to exclude other brokers, but also himself from obtaining a purchaser. Exclusive agency secures to the broker preference over all persons other -than the owner; exclusive right secures him against the interference of the owner as well. Liebow v. Tielson, 209 N. Y. S. 224: Harris v. McPherson, 97 Conn. 167. Donahue v. Riener Co., 127 Atl. 359. 10 A. L. R. 818.
In the case of Des Rivieres v. Sullivan, 347 Mass. 443, supra, in which a broker’s commission for sale of property is involved, the Court, through inference, appears to indicate that there is a distinction between an exclusive agency and an exclusive right by referring (p. 447) to the Harris v. McPherson case (97 Conn. 167, supra), pointing out that in the latter case the broker was given the “exclusive sale” of the defendant’s property, and not merely the exclusive agency.
In the case of Simon v. Lettiere, 257 Mass. 563, however, although the evidence shows that an exclusive right was given, the Court uses the words “exclusive agency” in describing the broker’s powers. In the latter case and in the Des Rivieres V. Sullivan, supra, case it would have been immaterial, even if there had been a recognition of a different meaning between the two terms,—inasmuch as the Court held that the principal is not bound because there was no consideration for the relinquish' men-t of said exclusive fight or exclusive agency. •
In the case at bar the trial judge evidently does not draw any distinction between exclusive right and exclusive agency, inasmuch as in his finding of fact, and also in his ruling, he speaks of the plaintiff’s authority to act as the “exclusive agent" of the defendant, although in the evidence presented the phrase' ology is “exclusive right.”
This lack of differentiation does not, however, affect the decision in the case because, consistent with the reasoning in the Simon v. Lettiere case, supra, there is no consideration for the relinquishment of any of the defendant’s rights, and there' fore there was no contract of employment, but only an offer, which could be withdrawn at any time before the condition was fulfilled.
According to Massachusetts decisions, which are in harmony with some but in conflict with other jurisdictions, the granting of exclusive agency or right, even if for a limited time, is a revocable naked power, an offer to pay for services when ren *50 dered, if completely performed within the limited period and before revocation. It is not a contract, either express or implied, as there are no mutual obligations, the owner’s promise being unilateral.- The offer does not become a contract until there has been an acceptance through the fulfillment of its terms. The promise of the owner becomes obligatory only upon per' formance. Train v. Gold, 5 Pick. 580.
The offer is only considered accepted and ripened into a contract when the purchaser is found within the time limited. There being no contract, therefore, until the procuring of a purchaser by the broker, the owner is under no. obligation to the broker until such happening, and prior to same can with' draw such offer by marking a sale himself. “The consideration is the performance of certain things to be done in -the future.” Elliott v. Kazagian, 255 Mass. 459, supra, at 463; that is the procuring of a purchaser. No purchaser having been found, there is no consideration. Simon v. Lettiere, 257 Mass. 563, supra. Des Rivieres v. Sullivan, 247 Mass. 443, supra. Ettinger v. Loux, 28 A. L. R. 1265. Duross Co., Inc., v. Jannelli, 240 N. Y. S. 617. Williston, Contracts, s. 60, 60 A. Mechem, Agency, s. 2446. Auerback v. Internationale Gesellschaft, 177 Fed. 458, 462.
This doctrine holds that, as'the broker entered into no obli' gation on his part, was at liberty to act or not as he pleased, and would incur no liability by failing to do anything, it is a unilateral contract. • According to the latest Massachusetts decisions, no binding obligation is intended or incurred by the broker in the use of the words “I shall endeavor” which would subject him to legal liability in the event he made no endeavors, said promise being merely gratuitous. 54 Law Quarterly Re' view, 257 (1938), on “Reform of Consideration.”
Some states hold that the express or implied promise to en' deavor to find a customer, and the commencement of such en' deavors through expenditure of time, or money, is good consideration, serves as the acceptance to the offer of the principal, and thus satisfies the requirement of mutuality of a bilateral contract. Harris v. McPherson, 97 Conn. 167, supra. Torrey & Dean, Inc., v. Coyle, 7 Pac. 2nd, 562. Metcalf v. Kent, 104 Iowa 487. Harrison v. Aigerson, 115 Ill. App. 226. Blank v. Longenberger, 231 N. Y. S. 79.
This theory of consideration appears to be followed also by the early case of Goward v. Waters, 96 Mass. 596, 599, cited in 19 L. R. A., N. S., 598, in which case, although no pun ■chaser was obtained by the broker, he nevertheless was permitted to recover on the theory that subsequent services to be rendered by the broker in procuring a purchaser furnished a sufficient ■consideration for the promise of the owner. This case appears to be in conflict with the more recent cases of Simon v. Lettiere, 257 Mass. 563, supra. Des Rivieres v. Sullivan, 247 Mass. 443, supra.
*51 Under the theory of consideration laid down in these later cases, unless a customer is procured by the broker he cannot recover, even though he may have been given an exclusive right or an exclusive agency, and for a limited time. Provisions for exclusive rights and for a limited time, therefore, would appear to be superfluous, because a broker’s right to recover would be the same whether or not his powers were exclusive and for a limited time, providing he procured a purchaser.
It would appear, in the case at bar, following the Simon v. Lettiere case, supra, that there is a lack of consideration regardless of any partial services that may have been rendered by the broker in attempting to procure a customer, and that he could not recover.
Report dismissed.