BUTTERICK PUBLISHING COMPANY *vs.* J. FARLEY BOYNTON & another.

Middlesex.     January 24, 1906. — March 5, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Contract,* Construction. *Agency. Equity Jurisdiction. Words,* "Special agent."

A contract between a corporation engaged in manufacturing and selling patterns for all kinds of garments worn by women and children and a firm of dry goods merchants gave the merchants the right to act as "special agent" of the corporation for the sale of its patterns in a certain city for a period of two years, and provided that the merchants should "endeavor at all times to conserve the best interests of the agency." *Held,* that there was no obligation on the part of the merchants not to act as the agents of other pattern manufacturers in the city in question during the period of the contract.

A bill in equity alleged that the plaintiff, a corporation engaged in manufacturing and selling patterns for women's and children's garments, made a contract in writing with the defendants, a firm of dry goods merchants, by which the defendants were to act as the plaintiff's "special agent" in a certain city for two years, to buy the plaintiff's patterns, to keep them on their ground floor with proper attention by an attendant, and "to endeavor at all times to conserve the best interests of the agency," that the defendants were engaged in the sale of patterns of a competitor of the plaintiff and were not handling or selling the plaintiff's patterns but were seeking to prejudice their customers against the plaintiff's patterns; and prayed that the defendants might be enjoined from advertising or selling the patterns of the plaintiff's competitor. On demurrer to the bill for want of equity, it was *held,* that the plaintiff's remedy, if any, was at law and not in equity.

BILL IN EQUITY, filed February 9, 1905, by a corporation engaged in the business of manufacturing and selling patterns

for all kinds of garments worn by women and children and in publishing periodicals and catalogues illustrating them, to restrain the defendants from certain acts in alleged violation of a contract in writing between the plaintiff and the defendants dated March 28, 1904, giving the defendants the right " to act as special agent " of the plaintiff for the sale of its patterns in the city of Marlborough for the term of two years, the substance of the prayer being stated in the opinion.

The defendants demurred to the bill, and alleged as causes of demurrer:

" 1. That the plaintiff has not stated such a case as entitles it to any relief in equity against the defendants or either of them.

" 2. That the contract annexed to the plaintiff's bill does not stipulate that the defendants or either of them shall not sell any other patterns during the time said contract is in force."

The following is a copy of the contract annexed to the bill:

" United States, Form 3.                                2-26-1900.

" This Agreement, made this 28th day of March, 1904, between The Butterick Publishing Co. [Limited], of New York, N. Y., party of the first part, and Boynton & Allen of Marlboro, Mass., party of the second part, witnesseth :

" That the party of the first part agrees: To grant, and does hereby grant, to the party of the second part the right to act as Special Agent for the sale of its Patterns in the City of Marlboro, State of Massachusetts ; To sell and deliver at its General Office in New York, N. Y., to said party of the second part, Patterns at 50 per cent. of retail prices, and advertising matter at the prices specified on the reverse side hereof ; To allow said party of the second part to return twice during each year (in January or February and in July or August), at nine-tenths of the sum paid for them, Patterns purchased under this agreement, in exchange for new Patterns to be ordered at the time of said return or subsequently, but not in exchange for other goods than Patterns ; To permit the sum of Two Hundred (200) Dollars, part of the purchase price of patterns charged to said party of the second part by said party of the first part to stand unpaid on its books as a ' Standing Credit,' to bear

interest at four per cent. per annum, payable semi-annually on January fifteenth and July fifteenth of each year, and to become due and payable on the termination of this agreement, either by regular notice or otherwise.

" That the party of the second part agrees, in consideration thereof: To purchase from the party of the first part, and to keep on hand for sale at all times during the period this agreement continues in force, except in the months of January, February, July and August of each year, Patterns to the amount of Four Hundred (400) dollars, at 50 per cent. of retail prices; To allow said party of the first part, or any party delegated by it, to examine and take account of the Pattern Stock at any time it may desire; To purchase advertising matter from the party of the first part to a number not less than Twenty Thousand (20,000) Sheets of Butterick Metropolitan Fashions and Twelve Hundred (1,200) Small Quarterly Catalogues per annum, to be gratuitously distributed; To pay to the party of the first part, for Patterns to be furnished by it as original stock, the sum of Two Hundred (200) dollars, as follows: One (1) Dollar on signing this contract, one hundred and ninty-nine (199) dollars on or before November 15th, 1904; And to pay for goods purchased from said party of the first part on or before the fifteenth day of the month succeeding the month of purchase; To pay all expenses incurred in the transportation of goods; To keep the Patterns on the ground floor of the building; To give or cause to be given by a lady attendant proper attention to the sale of the Patterns; To endeavor at all times to conserve the best interests of the agency, and not to remove the Pattern stock from its original location nor to assign it or the agency to any other party or parties, without the written consent of the party of the first part.

" That it is mutually agreed : This agreement shall remain in force for the term of two years from date and thereafter continue until it shall be terminated in the following manner : At any time after the expiration of two years, either party may give the other a notice, in writing, of a desire to terminate the agreement, and upon the expiration of three months following such notice, or within one week — either before or after —

said expiration, all Patterns held by party of the second part (except as hereinafter set forth) shall be returned to party of the first part at its General Office in New York ; and if all the provisions of this agreement shall have been duly performed by party of the second part, the party of the first part shall pay to said party of the second part in current funds, within thirty days of the time of delivery to it of said Patterns, three-fourths of the amount charged for the same.  Patterns returned, either for exchange or for redemption at the termination of the agreement, must have been procured direct from the party of the first part, and not through any other party; and Patterns stamped or marked (otherwise than by mark affixed by party of the first part at the time of sale), wet, opened or in any way damaged or defaced, shall not be returnable.  Failure or neglect to perform the provisions of this agreement by either party shall, at the option of the other, release said other party from all obligations hereunder ; and failure to require compliance with the strict letter of this agreement shall not constitute a waiver of any condition of the agreement, nor forfeit nor prejudice any rights hereunder.

" In witness of this agreement we have hereunto signed our names this 28th day of March, 1904.

" Done at Marlboro, Mass.

> " The Butterick Publishing Co. [Limited.]
> Per C. B. Dryden.
> Boynton & Allen."

The Superior Court made a decree dismissing the bill, with costs to the defendants; and the plaintiff appealed.

*A. S. Hall,* for the plaintiff.

*J. J. Shaughnessy,* for the defendants.

MORTON, J. The defendants are dry goods merchants in the city of Marlborough and, according to the allegations contained in the bill, are the leading establishment in Marlborough and its vicinity.  They entered into an agreement with the plaintiff in which they agreed to buy patterns of it and amongst other things " to keep the Patterns on the ground floor of the building; To give or cause to be given by a lady attendant proper attention to the sale of the Patterns; To endeavor at all times

to conserve the best interests of the agency, and not to remove the Pattern stock from its original location nor to assign it or the agency to any other party or parties, without the written consent" of the plaintiff. The agreement was to continue in force till June 28, 1906, and the bill alleges that the defendants have engaged in the sale of patterns of the Independent Peerless Pattern Company, a competitor of the plaintiff, and that they are not handling or selling the plaintiff's patterns but have sought to prejudice their customers against them, and instead of acting faithfully as the agents of the plaintiff, and endeavoring to conserve the best interests of such agency, have endeavored to injure the reputation of the plaintiff's goods and to promote the reputation and sale of the said Peerless patterns and in other respects have violated their contract. The prayer is that the defendants may be enjoined till the expiration of the term provided for in the contract from advertising or selling the Peerless patterns and doing anything to prejudice the standing or reputation of the plaintiff's patterns and for the assessment of damages. There was a demurrer which was sustained and a final decree entered dismissing the bill with costs. The plaintiff appealed.

We think that the decree should be affirmed. The contract does not provide that the defendants shall not sell any other patterns during its continuance, nor that they shall act solely in the interest of the plaintiff. In *Ropes* v. *Upton*, 125 Mass. 258, and *Standard Fashion Co.* v. *Siegel-Cooper Co.* 157 N. Y. 60, relied on by the plaintiff, there were clear and explicit negative agreements. In the present case the plaintiff asks us, in effect, to imply from the provision that the defendants will " endeavor at all times to conserve the best interests of the agency," and from other provisions, an agreement on the part of the defendants not to sell any patterns except the plaintiff's patterns, and then to enforce performance by restraining the defendants from violating the contract as thus construed. We assume in favor of the plaintiff that the substance of the contract rather than its form is to be considered, and that, if the contract were construed as it contends that it should be, namely, as containing a negative stipulation, that it would be entitled to the relief which it seeks. But we do not think that it fairly can be so construed. An agreement " to conserve the best interests of the agency," adds

little if anything to an agreement to act as agent. It is the duty of the agent to attend to and promote the interests of his principal. But an agreement to act as agent for one person does not imply and cannot be fairly construed, we think, as containing an agreement not to act for any other person. Very likely the plaintiff expected that the defendants would not act for any other parties, but there is no agreement that they should not or would not. Moreover, while the agreement provides that the defendants shall act as " Special Agent " for the sale of the plaintiff's patterns in the city of Marlborough, there is no stipulation on the plaintiff's part that they shall be its sole and exclusive agents. If the defendants have violated their contract the plaintiff can terminate it, and recover such damages as it shows that it has sustained. But we see no ground on which it is entitled to equitable relief.

*Decree affirmed.*