HENDERSON & BEAL, INC. *vs.* LOUIS I. GLEN & another.[1]

Suffolk. November 6, 1952. — February 3, 1953.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Broker*, Commission. *Contract*, Implied, With broker. *Election.* *Practice, Civil*, Election.

Evidence warranted findings that the owners of a business building or their authorized agent hired a broker to obtain a customer ready, able and willing to purchase the building on certain terms given the broker, including the procurement by the owners of a contract for heating the building, that the broker produced such a prospective purchaser, that the amount of the broker's commission was not fixed by the parties, and that he was entitled to recover the fair value of his services from the owners. [751–753]

In an action by a real estate broker against a landowner wherein the evidence was conflicting as to whether the parties had fixed the amount of the plaintiff's commission for procuring a customer for the defendant's property, there was no error in a denial of a motion by the defendant to require the plaintiff to elect between a count alleging an express contract to pay a commission in a specific amount and a count in quantum meruit. [754]

CONTRACT. Writ in the Superior Court dated December 8, 1948.

The action was tried before *Brogna*, J.

*Thomas H. Mahony*, for the defendants.

*Joseph B. Abrams*, (*Lionel H. Perlo* with him,) for the plaintiff.

COUNIHAN, J. This is an action of contract to recover for services in procuring a customer for certain real estate

[1] The word defendants wherever it appears herein refers to Louis I. Glen and I. Roy Levy. Their respective wives were coöwners of the building hereinafter referred to and were originally joined as defendants in this action but upon motion directed verdicts were entered in their behalf and no exception was taken by the plaintiff.

owned by the defendants. The declaration is in two counts, the first alleging an express contract to pay the plaintiff a broker's commission in a specific amount and the second in quantum meruit.

The jury found for the defendants on count 1 and for the plaintiff on count 2. The action is here upon exceptions of the defendants to the denial of a motion for directed verdicts and to the denial of a motion requiring the plaintiff to elect between counts 1 and 2. Inasmuch as there was a verdict for the defendants on count 1, we consider the exceptions to the denial of the motion for directed verdicts only in so far as they relate to count 2. There was no error.

The evidence in its aspect most favorable to the plaintiff may be summarized as follows: The defendants with their respective wives were owners of a building No. 275–285 Congress Street, Boston, when this controversy arose, and were then represented by an attorney named William L. Berger. The plaintiff was engaged in the real estate business and had in its employ as a broker one Frank Howard who had thirty years' experience in that business. Sometime in June, 1948, Howard met Mr. Berger who told him that he had this building for sale and that he had all the data regarding it in his office. The next day Howard called on Mr. Berger who gave him a "listing" in writing of this property.[1] Among other things the "listing" recited that heat for the building was supplied by the Boston Edison Company. Mr. Berger gave him the names of the defendants and their address and said that it would be all right for Howard to talk with them to verify the figures in the "listing" and ascertain whether a heating contract would be available if the building should be sold. As a result Howard called upon the defendants and gave them his card. He told them of his talk with Mr. Berger and showed them the "listing." He told them that he had a customer who was ready to buy the building on the terms and for the price

---

[1] This "listing" is not an exhibit but its terms by inference at least may be drawn from the record. These terms were later incorporated into a proposed purchase and sale agreement which is hereinafter described.

asked by Mr. Berger, and that he would have to have a heating contract as represented by Mr. Berger. The defendants said that the terms, conditions, and price were all right. They said that the boilers in the building were inadequate and that they were purchasing heat from one Weinrib, the owner of the adjoining building, at the same rate as that charged by the Boston Edison Company. They further said, "any other information you want you better get in touch with Mr. Berger. He is in complete charge and anything he says is all right by us."

Howard told them that if his customer agreed to purchase upon the terms and conditions and for the price which they had discussed the plaintiff was to receive a full commission according to the rates of the Boston Real Estate Exchange which would amount to $3,500 more or less. Levy promised to pay such a commission.

Howard thereupon went to work and after talking with several brokers, through one Segel, was brought into contact with one Joseph Glasser. Subsequently Howard, Segel, and Glasser went to Mr. Berger's office on July 8, 1948. Glasser who was then able to purchase told Mr. Berger that he was ready and willing to purchase the building on the terms and for the price which Mr. Berger had given Howard. Mr. Berger said he would get a five year heating contract for the building from Weinrib similar to that which the defendants had. Mr. Berger then drafted a purchase and sale agreement which substantially embodied all of the terms agreed to by Howard, Mr. Berger, and the defendants except the provision for the payment of the full commission to the plaintiff. This agreement set out the purchase price, the amount of the deposit, the balance due on the outstanding mortgage with the terms of payment of principal and interest, the amount of cash to be paid upon passing of papers, and that the deed would be subject to taxes, local zoning laws, party wall agreements of record, and leases. It recited the terms of all the leases and listed in detail the income and expenses of operating the building and fixed the time of passing papers. It referred to an agreement for

heating the building which was to be assigned to the pur-
chaser when papers passed. The agreement drawn by Mr.
Berger erroneously recited that a copy of this heating agree-
ment was annexed to and made part of the agreement.

While the drafting of this agreement was in process, Mr.
Berger conferred with the defendants several times on the
telephone. All of its terms were agreed to by Glasser but
there was considerable discussion about the commission to
be paid by the defendants to the plaintiff. Howard refused
to accept anything less than $3,500 and Mr. Berger said
the defendants would not pay more than $2,000. Finally
at the request of Mr. Berger, Glasser said that rather than
lose the deal he would contribute an additional $1,500
toward the payment of the commission.

Several times during his talks with Mr. Berger, Howard
spoke of need for a heating contract, and Mr. Berger as-
sured him that it had been prepared and was waiting for
the signature of Weinrib. At one time he said, "Don't be
childish about it. We can't sell the building we know that
without a heating contract."

The defendants later refused to sell to Glasser but sold to
Weinrib for $140,000 without payment of a commission.

The fair value of the plaintiff's service was $3,500.

Much of this evidence was contradicted by Mr. Berger
and the defendants who contended that the negotiations
only amounted to an offer to sell which was never accepted.

The obligation of an owner, or one who engages a real
estate broker, to pay a commission to the broker has been
the subject of frequent litigation in our courts. Through a
maze of conflicting facts and confusion of varying circum-
stances one clear rule has been established and that is that
a broker in the absence of special circumstances is entitled
to a commission if he produces a customer ready, able, and
willing to buy upon the terms and for the price given the
broker by the owner. In *Ripley* v. *Taft*, 253 Mass. 490, at
pages 492–493, it was aptly stated, "The obligation of a
broker employed to procure a customer for the purchase of
property is at an end, and he is entitled to a commission,

when such customer has been produced. It is immaterial whether a contract between the seller and prospective purchaser is made, or, if made, whether carried into effect; that is a matter with which the broker is not concerned and on which his right to a commission is in no way dependent." This rule has been but recently affirmed in *Palmer Russell Co.* v. *Rothenberg,* 328 Mass. 477, 481, and *Alphen* v. *Bryant's Market, Inc., ante,* 540, 542. And "the right of the broker to his commission is not affected by the fact, if it is a fact, that the principal was only a part owner of the land to be sold." *Monk* v. *Parker,* 180 Mass. 246, 247. *Coney* v. *Brookline Savings Bank,* 327 Mass. 527, 528. It is true that the burden of proof is on the broker to show that his agreement was to find a purchaser. He is "required to show, in order to recover, that he produced a customer who was able, ready and willing to purchase on the defendant's terms, and no more." *Barsky* v. *Hansen,* 311 Mass. 14, 16.

The fundamental inquiry here therefore is whether or not the evidence would warrant a finding by the jury that the plaintiff's undertaking was to produce a customer ready, able, and willing to buy on the defendants' terms and that it performed its part of the undertaking by producing such a customer. If the broker did not produce the result for which it was employed, it is not entitled to recover on the express contract nor in quantum meruit because its services have been of no avail to the owners, no matter how much effort it put in. *Staula* v. *Carrol,* 312 Mass. 693, 694–695. *John T. Burns & Sons, Inc.* v. *Brasco,* 327 Mass. 261. We are satisfied that there was sufficient evidence here to send this action to the jury and that the jury were warranted in arriving at the conclusion which their verdict indicated.

While the "listing" which Mr. Berger originally gave Howard is not an exhibit, enough is shown in the record to demonstrate that this "listing" set forth certain terms and the price which Mr. Berger asked for the property. It also referred to a heating contract. A copy of this "listing" was shown to the defendants and at least one of them said it was "all right." Particular mention was made of the fact

that a purchaser would have to have a heating contract. The defendants or at least one of them told Howard, "any other information you want you better get in touch with Mr. Berger. He is in complete charge and anything he says is all right by us." The jury would be warranted in finding that these statements constituted a ratification of the employment of Howard by Mr. Berger and that Mr. Berger was authorized to continue negotiations for the sale with Howard. This situation is further emphasized by evidence that, during the drafting of the proposed agreement for purchase and sale, Mr. Berger consulted with the defendants regarding the terms of it. This agreement, which outlined in minute detail all of the terms of the sale in so far as the purchaser was concerned, was accepted by Glasser who further exemplified his readiness and willingness to purchase by agreeing to contribute additional money toward the payment of the commission.

The evidence as to the agreement to pay a specific sum to the plaintiff as a commission was contradictory and the jury could reasonably find that no such definite agreement was entered into. "If they so found they would not be warranted in finding for the . . . [plaintiff] on the first count of the declaration; but the agreement having been made, if the . . . [plaintiff] did . . . [its] part, . . . [it] could recover on the second count, what . . . [its] services were actually worth." *Altman* v. *Goodman*, 255 Mass. 41, 43. That the evidence showed an attempt by the parties to make a new agreement, after the defendants had refused to agree to pay the commission in full, does not affect the right of the plaintiff to recover the fair value of its services which the jury could find was earned when its representative produced a customer on the terms given him by the defendants or their authorized agent, Mr. Berger. *Casey* v. *Fritz Carlton Hotel Co.* 254 Mass. 223.

The defendants contend that the provision for a heating contract was an encumbrance on the property and that, by the terms of the proposed agreement, failure to remove it

relieved the defendants of all obligations to the plaintiff. But the jury could find that it was not an encumbrance but was rather an appurtenance which Mr. Berger and the defendants agreed to provide as part of the terms of the sale. They could find that, the defendants having agreed to provide a heating contract, failure to do so in no way relieved the defendants from their obligation to the plaintiff, and that the heating contract was no part of the undertaking of the plaintiff. The jury could also find that it was incumbent upon the defendants to procure it. *Simon* v. *Meyer*, 261 Mass. 178, 182. *Alphen* v. *Bryant's Market, Inc., ante*, 540, 544.

The motion for a directed verdict for the defendants on count 2 was rightly denied.

There is no merit in the exceptions of the defendants to the denial of their motion to require the plaintiff to elect between counts 1 and 2. In *Simon* v. *Lettiere*, 257 Mass. 563, at page 570, it was said, "As to count numbered 5 [here numbered 2], it is clear that an offeree cannot recover in quantum meruit for services rendered in an attempt to fulfil the terms of a proposal . . . ; and it is equally plain that following full performance the offeree may sue at his election in the terms of the proposal . . . ; or on the count of quantum meruit if the terms of the proposal are fulfilled and the amount to be paid for the service is not fixed as one term of the offer." Here, as we have said, the fixed amount of the commission was in dispute so that the plaintiff was entitled to go to the jury on both counts, and it was for the jury to say upon which count the plaintiff was entitled to recover. *Donovan* v. *Draper*, 268 Mass. 555, cited by the defendants in support of their contention that an election is required, appears to be authority to the contrary.

*Exceptions overruled.*