HYMAN KAPLAN *vs.* HENRY WENZ, INC.

Suffolk. April 6, 7, 1954. — June 9, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Broker,* Commission. *Proximate Cause.*

A finding that the efforts of a real estate broker were the efficient cause of a sale of business property and entitled him to a commission was warranted by evidence that after being hired by the owner of the property he procured a customer and twice showed him the property, obtained from the owner and gave to the customer information and

terms concerning the property, introduced the owner to the customer so that they could save time by negotiating directly, and was told by the customer and informed the owner that the customer was interested in a purchase, and thereafter for several months frequently saw the customer and urged the purchase, until finally he learned of a prospective sale, soon thereafter consummated, of the property to the customer through another broker.

CONTRACT. Writ in the Superior Court dated January 18, 1952.

The action was tried before *Collins,* J.

*William G. Todd,* (*Robert E. Kelley* with him,) for the defendant.

*Lee M. Friedman,* for the plaintiff.

COUNIHAN, J. This is an action by a real estate broker for a commission on the sale of certain property, owned by the defendant, to Joseph Mandell and Louis Bornstein for $57,000 on August 1, 1951, pursuant to a buy and sell agreement dated July 11, 1951. It was tried to a jury who returned a verdict for the plaintiff. It comes here upon the defendant's exceptions to the denial of its motion for a directed verdict and to the denial of its motion to enter a verdict for the defendant under leave reserved. There was no error.

Both exceptions raise the same question of law. The test is whether the evidence considered in its aspects most favorable to the plaintiff warranted the submission of the action to the jury. *Brightman* v. *Blanchette,* 307 Mass. 584, 589. *Berwick & Smith Co.* v. *Salem Press, Inc., ante,* 196.

This evidence may be summarized as follows: The plaintiff was a real estate broker. The real estate which was owned by the defendant was located at West Broadway and Athens Street, South Boston, and included two industrial buildings, a five tenement dwelling house, a three story concrete building with basement, and two lots of vacant land. It was agreed that the usual broker's commission was 5% of the purchase price.

In the latter part of December, 1950, the plaintiff learned that this property was for sale. On December 28, 1950, he

wrote the defendant a letter asking for an interview. [1] As a result he had a telephone call from one Villwock who said this property was for sale for $65,000. The plaintiff told Villwock that he was a broker and that he believed that he had a customer whom he could interest in the purchase of this property, and that if successful he would expect a commission of 5%, which was the regular Real Estate Board rate, and Villwock said "all right." On January 2, 1951, by arrangement with Villwock he visited the property and made a thorough inspection of it. On March 7, 1951, he brought ·this property to the attention of Mandell & Company which was composed of Joseph Mandell, Louis Bornstein, and Paul Bornstein. He gave them full details about the property and told them the asking price. They expressed interest in the purchase of it, and on March 16, 1951, by arrangement with Villwock he brought Mandell and the Bornsteins to South Boston and showed them through the property. He introduced them to Villwock as prospective purchasers. There was talk with Villwock about financing the transaction and he referred them to one Cramer who, he said, would make all the arrangements. It was agreed that Villwock and Cramer had full authority to act for the defendant.

That same afternoon the plaintiff called upon Cramer at his place of business. Cramer gave him full information about the property, its area, its assessment, and the amount of the unpaid balance of the mortgage on it. He set a price of $60,000 for the property and said that a mortgage of $50,000 could be arranged. He expressed a desire to close

---

[1] "December 28, 1950

Re — Broadway — South Boston

Mr. [sic] Henry Wenz Inc.
150 Orleans St.
East Boston

One of our customers has advised us that you have a building on 'Broadway South Boston' (very indefinite to us) for sale and requested us to interview the owners with a view of cash offer for quick occupancy.

If there is an interest, may we please discuss this with you at your early convenience.

Please advise.

Season's best greetings.                    Sincerely,

                                         H Kaplan & Sons"

the sale as soon as possible. While there the plaintiff called Mandell on the telephone and gave him the information which he had received from Cramer. He introduced Cramer to Mandell over the telephone and told them that they could save time by dealing directly with each other. He told them that if at any time he could be of help he would be available. He asked Cramer if any other brokers were involved and Cramer replied, "No, you can do business with me or any other broker." The next day the plaintiff wrote Cramer a letter a copy of which appears below.[1] No reply to this letter appears in the evidence.

The plaintiff went directly from Cramer's office to Mandell's office where he talked with Mandell and Louis Bornstein. He told them of the details of the proposed sale substantially as he had stated in his telephone talk with Mandell, and he gave them a written memorandum which he had prepared. He urged upon them the advisability of purchasing and again he told them that they could do business directly with Cramer in order to save time. They said they were interested in buying and would let him know about it shortly. He visited them twice before March 25,

---

[1] "March 17, 1951

Mr W M Cramer Jr V P
Gum Products Co. East Boston
My dear Mr. Cramer:
   . . . We have reference to our employment and authorization as brokers to sell the real estate of H Wenz Co. at West Broadway and Athens St. So. Boston and our further inside inspection of the premises yesterday with our customer Mandell & Co, Louis Bornstein, Joseph Mandell, and their associates, Cross St. Boston, thru the courtesy and with Alfred J Villvock, President, Henry Wenz Inc.
   Upon leaving your office after the discussion of terms with us and your immediate telephone conversation with the Mandell group establishing first contact and relations with them so that you could personally continue to complete trading, it was considered that we had a customer ready, willing and able; I immediately went directly to their office and explained that time was of the essence as you had explained to me that you had several buyers showing an interest.
   The data, terms, specifications given me by you together with the result of my inspection with them and Mr. Villvock earlier in the day were again gone over — in fact, I gave them a pencil memorandum of the above.
   Will you please keep us informed of any activities with our customer to effect a sale as we desire to continue to be of service acting as the predominant, efficient procuring cause to earn a full commission.
   We operate under the Boston Real Estate Board commission rates.
                                        Sincerely,
                                             H Kaplan & Sons"

1951, and urged them to act. On March 25, 1951, he brought Mandell and the Bornsteins to South Boston where they again looked over the property. He took pictures of the several buildings which he gave them. While there they discussed the best way to use the buildings.

On March 26, 1951, he talked with Cramer over the telephone and told him that the Mandell company was definitely interested in buying. From that day on he saw Mandell frequently and urged the purchase. As late as June 30, 1951, Mandell told him that "we are getting along all right" in direct negotiations with the defendant. In the meantime he showed Mandell other properties which were for sale. On July 31, 1951, he saw Mandell at his office and asked him how things were going on the Cramer deal. Mandell then told him that they had bought the property through another broker about three weeks before, and that they were passing papers "tomorrow." The plaintiff expressed surprise and indignation and said that he was entitled to a commission. On the same day he sent Cramer by messenger a letter.[1]

Mandell testified that he made an offer of $50,000 through the plaintiff for this property and that there was no time

---

[1] "July 31, 1951
Gum Products Co.
        Attn: Mr Wellington M Kramer, Jr, President
150 Orleans St. East Boston, Mass.
Henry Wenz Inc
        Att: Mr Alfred Villwock, Manager
36 West Broadway So. Boston, Mass.
Gentlemen:
    I understand you are about to transfer title to your property, Broadway, South Boston, to Mandell & Co. Inc. or their nominees.
    You will recall that originally I introduced your Mr Alfred Villworth, Manager of Henry Wenz Co., to these people and got them interested in it. After that, I, with Mr. Villwock, showed Mandell, Bornstein and associates through the property. I turned over this customer to you to complete the trading after having given all the data to them which I had from you.
    I am writing this letter to let you know that I claim a brokerage commission and to safeguard you so that if Mandell & Co. Inc., or their nominee should undertake to divert this commission to some other broker you may protect yourself so that you will not have to pay two brokerage commissions.
                                Very truly yours,
                                H Kaplan & Sons
                                    H Kaplan
                                        H Kaplan"

when they lost interest in the purchase of the property at a proper figure.

It also appeared that on April 16, 1951, the defendant entered into a buy and sell agreement with Joseph B. Margolis for this property for $57,000. No broker was concerned with that transaction. This deal fell through about June 11, 1951. When this happened Cramer communicated with William J. Farrell of the William J. Farrell Company which formerly had this building for sale as a broker. Under date of June 14, 1951, Farrell wrote Mandell & Company a letter offering this property for sale. [1] Prior to the receipt of this letter Farrell had at no time shown this property to them.

After the receipt of this letter Mandell and his associates had several talks with Farrell and made several offers for the property through Farrell. He finally told them that he thought it could be bought for $57,000 and they authorized him to make such an offer. Cramer told Farrell that he would accept the offer if Farrell would take a commission of $2,000 which was $850 less than the regular commission of 5%. The deal with Mandell and Bornstein was finally closed by the agreement dated July 11, 1951, one of the terms of which was, "By special agreement a com-

---

[1] "June 14, 1951

Joseph Mandell & Co., Inc.
109 Cross Street
Boston, Mass.
Gentlemen:

The building at 36 West Broadway, South Boston is again on the market for sale for $60,000. You will recall that this is a three-story and basement all concrete structure with approximately 5,000 sq. ft. on a floor. The building is equipped with a 3,000 pound freight elevator, a high pressure coal burning boiler, an air-conditioning system and refrigeration units. The main factory building is on a land area of 5428 sq. ft. In addition there are two lots totaling 2780 sq. ft. adjoining the building to the rear with about 55' frontage on Athens Street. Alongside the building on Broadway there is a five-story tenement building on 2658 sq. ft. of land. The entire parcel is assessed for $73,600.

The land in the rear may be utilized for the construction of a tailboard level truck loading platform to which trucks would have easy access.

I would like to have the opportunity to again discuss with you the purchase of this property.

Very truly yours,
William J. Farrell
**William J. Farrell**"

mission of Two Thousand Dollars ($2,000.) will be paid by the Seller to William J. Farrell Company, the broker herein, if and when conveyance is made hereunder and the purchase price paid in full to the Seller."

Much of this evidence was contradicted by the defendant and its witnesses, but the rule still holds that we must consider this action upon the evidence most favorable to the plaintiff.

The only question for our determination is whether this evidence warranted a verdict for the plaintiff who had the burden of proving that "his efforts were the efficient cause of the sale . . . . He did not have to be present at the sale, or cognizant of it at the time, and its terms need not be the same as those given to the broker . . . . The jury could find that the plaintiff's efforts, though not extensive, were the efficient cause of the sale . . . ." *Siegel* v. *Lowe*, 327 Mass. 154, 155. *Kacavas* v. *Diamond*, 303 Mass. 88, 91–92. *Sherman* v. *Briggs Realty Co.* 310 Mass. 408, 412. *Morad* v. *Haddad*, 329 Mass. 730, 734. *Henderson & Beal, Inc.* v. *Glen*, 329 Mass. 748.

We think on the evidence that the question of efficient cause was for the jury. *Cadigan* v. *Crabtree*, 192 Mass. 233. *Beck* v. *Warren Institution for Savings*, 312 Mass. 315. *Chisholm* v. *McCarthy*, 325 Mass. 72.

The cases relied upon by the defendant in its brief do not appear to be in point. In *Nichols* v. *Atherton*, 250 Mass. 215, 217, a judge, upon a report of a master, found as a fact that the second broker's efforts were the predominating cause of the sale. In the instant case the jury apparently found otherwise.

*Exceptions overruled.*