JAMES C. McEVOY *vs.* BENJAMIN GINSBERG & another.

Suffolk.    February 4, 1963. — April 5, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Broker,* Commission, Broker's duty of fidelity.    *Proximate Cause.*

Evidence in an action for a broker's commission against an owner of property who promised to pay the plaintiff a certain commission when a lease of the property was signed warranted findings that the parties agreed that the defendant was to deal directly with a manufacturer who ultimately leased the property, with no participation by the plaintiff in the negotiations, that the defendant and the manufacturer had been brought together by the plaintiff, that he was the efficient cause of the lease, and that he was entitled to a commission; recovery of the commission was not barred by reason of the fact that during a lapse in the negotiations between the defendant and the manufacturer the plaintiff offered for the manufacturer's consideration property not owned by the defendant.

CONTRACT.    Writ in the Superior Court dated February 12, 1958.

The action was tried before *Fairhurst, J.*

*Lawrence H. Adler* for the defendant Benjamin Ginsberg.

*John M. Bashaw* for the plaintiff.

REARDON, J. This is an action of contract to recover a broker's commission. The jury found for the plaintiff. The case is here upon the defendant Benjamin Ginsberg's exceptions to the denial of his motions for a directed verdict and for entry of verdict under leave reserved. Both exceptions raise the issue of whether the case was properly submitted to the jury. *Barton* v. *New York, N. H. & H. R.R.* 332 Mass. 345, 346. The evidence is to be considered in its aspects most favorable to the plaintiff. *Holton* v. *Shepard,* 291 Mass. 513, 515. *Kaplan* v. *Henry Wenz, Inc.* 331 Mass. 480, 481.

The pertinent evidence may be summarized as follows: The defendant Benjamin Ginsberg (hereinafter called Ginsberg) owned a vacant building in Framingham known as the "Rollerena" which had been used previously as a roller skating rink. On August 23, 1957, the plaintiff McEvoy, a real estate broker, called Ginsberg on the telephone and informed him that he could arrange a lease to Raytheon Manufacturing Company if Ginsberg would pay him $5,000. At McEvoy's request Ginsberg on the same day wrote McEvoy as follows: "Confirming my telephone conversation of today, I will pay you five thousand dollars ($5000.00) commission when your concern will sign up a lease on the property number 280 Worcester Road, Framingham, known as the Rollerena." The next day, McEvoy wrote to Ginsberg enclosing a copy of a letter of even date which he had written to Paul Tetzlaff, assistant treasurer of Raytheon in charge of its real estate department. In these letters he made the suggestion that Tetzlaff and Ginsberg conduct their negotiations directly and informed Ginsberg how and where to contact Tetzlaff. The attention of Tetzlaff had been called to the property on two earlier occasions both by a former owner and by a broker acting for Ginsberg but nothing had developed therefrom. Discussions between Ginsberg and Raytheon commenced on August 26, 1957, and continued until they lapsed in September, 1957. No agreement on a lease was reached at that time. On October 17, 1957, McEvoy wrote to one Bradford, an officer at Raytheon, a

copy of this letter going to Tetzlaff, stating his regret that
the Rollerena did not suit Raytheon and offering for Ray-
theon's consideration a second property not owned by
Ginsberg. Save for these two written communications to
Tetzlaff and some telephone calls to Tetzlaff's secretary,
McEvoy was never in touch with Tetzlaff, never met him,
and never showed the Rollerena to nor discussed any terms
of a lease with Tetzlaff or any other Raytheon represen-
tative.

In September, 1957, Ginsberg leased the property to
Skate Rink Corp. which occupied it in October, 1957, and
proceeded to operate therein a roller skating rink. This
enterprise was unsuccessful and the business closed in
December, 1957. Notwithstanding this lease, Ginsberg con-
tinued through November, 1957, to call McEvoy about any
"progress by McEvoy with Raytheon." In that same
month Raytheon's need for space became acute and Tetzlaff
resumed negotiations with Ginsberg. On December 6, 1957,
Ginsberg, by an attorney, wrote to McEvoy notifying him
that the property had been leased to Skate Rink Corp., that
his services were no longer required, and that no commis-
sion would be due or payable. No mention was made in
this letter of the reinstituted negotiations with Raytheon.
These negotiations continued through December and cul-
minated in a lease of the property by Ginsberg to Raytheon
dated January 15, 1958. McEvoy neither participated in
these negotiations nor knew that they were in progress and
first learned of the lease through the press.

1. Ginsberg claims that McEvoy failed to do more than
bring the parties together. "Ordinarily a broker earns a
commission when he procures a customer able, ready and
willing to meet the owner's terms." *Magann* v. *Lawler
Bros. Theatre Co.* 312 Mass. 317, 318. *John T. Burns &
Sons Inc.* v. *Hands,* 283 Mass. 420, 422. The broker also
earns his commission when he brings the property he is
employed to lease to the attention of a third person whom
he turns over to his employer and a lease results from the
negotiations thus begun. See *Johnstone* v. *Cochrane,* 231

Mass. 472, 478; *Henderson & Beal, Inc.* v. *Glen,* 329 Mass. 748, 751–752.   Ginsberg argues that the provision contained in his letter of August 23, 1957, that McEvoy would be paid "when your concern will sign up a lease on the property" imposed on McEvoy the duty of arranging for and securing Raytheon's signature on the lease.   We incline to the belief that the words should rather be construed to fix that time when the plaintiff's commission was to become due and payable.   Yet were the words to be construed as argued by Ginsberg, the jury could have found from all the evidence that Ginsberg agreed with McEvoy that he was to deal directly with Raytheon with no participation by McEvoy in the negotiations.   It remained for the jury to determine what the agreement of the parties was and whether the plaintiff complied with it.   *Boyle* v. *Goldenberg,* 267 Mass. 24, 27.   *Henderson & Beal, Inc.* v. *Glen, supra,* p. 752.

2.   The law entitles the broker to his commission when he is shown to be the efficient cause of the sale or lease.   He can be found by the jury to be such even though he took no part in the negotiations, never saw the customer, and exerted no further effort after the customer deemed the property originally inadequate for his purposes.   *Holton* v. *Shepard,* 291 Mass. 513, 516.   *Sherman* v. *Briggs Realty Co.* 310 Mass. 408, 412–413.   *Green* v. *Warren Inst. for Sav.* 312 Mass. 307, 308.   *Libby* v. *Ivers & Pond Piano Co.* 317 Mass. 478, 479.   *Siegel* v. *Lowe,* 327 Mass. 154, 155.   It was a question of fact for the jury to decide whether or not McEvoy was the efficient cause of the lease.   *Beck* v. *Warren Inst. for Sav.* 312 Mass. 315, 316.   *Blood* v. *Jenkins,* 312 Mass. 691, 692.   *Kaplan* v. *Henry Wenz, Inc.* 331 Mass. 480, 486.

The jury could have found that Ginsberg and Raytheon were brought together by McEvoy and that the lease which was finally executed resulted from negotiations springing from his efforts.   The judge's refusal to rule as a matter of law that the plaintiff was not the efficient cause of the transaction was proper.   See *Corleto* v. *Prudential Ins. Co.* 320 Mass. 612, 617.

3.   There remains the consideration as to whether, as contended by Ginsberg, McEvoy was guilty of a breach of a duty of loyalty to Ginsberg in suggesting to Raytheon in the letter of October 17, 1957, that it consider leasing a property other than that of Ginsberg.   Certain cases have emphasized such a fiduciary relationship between broker and principal particularly where the broker's interest is adverse to that of his principal.   *Berenson* v. *Nirenstein,* 326 Mass. 285, 288.   A broker, as an agent, is charged with certain responsibilities.   *Tracey* v. *Blake,* 229 Mass. 57, 60. *Friedman* v. *Ballard,* 250 Mass. 167, 169.   He usually cannot act for others whose interests conflict with those of his principal.   *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 373–376.   Restatement 2d: Agency, § 394.   However, in the absence of a special restrictive contract, a real estate broker is free to offer the properties of all his principals to a prospective customer.   See *Butterick Publishing Co.* v. *Boynton,* 191 Mass. 175, 179–180; *Clark-Rice Corp.* v. *Waltham Bleachery & Dye Works,* 267 Mass. 402, 409.   *Libby* v. *Ivers & Pond Piano Co., supra.*   The trial judge did not err in his denial of the defendant Benjamin Ginsberg's motions.

*Exceptions overruled.*