*Northern District*

No. 7901

## CHELMSFORD COLONIAL REAL ESTATE CO., INC.
## d/b/a COLONIAL REAL ESTATE CO.

### v.

## MICHAEL L. MIRABELLA
### and
## LOUISE J. MIRABELLA

Argued: Feb. 1, 1973 - Decided: May 18, 1973

*Present:* Cowdrey, P.J., Bacigalupo, Flaschner, JJ.

Case tried to *Williams, J.* in the District Court of Lowell, No. 3055 of 1970.

**Flaschner, J.** In this case the trial judge entered a general finding for the plaintiff against the defendants in the amount of $1500. No special findings were filed. The action is a licensed broker's claim for a commission allegedly earned by it in procuring a customer a customer ready, able and willing to purchase the property of defendants (husband and wife) upon their terms as listed with it. The defendants' appeal is based upon alleged errors in rulings made by the trial judge on some of the defendants' requests for rulings.

The standard for review "is whether upon the evidence with all rational inferences which might be drawn therefrom a finding for the plaintiff can be sustained." *Cisco* v. *Zussman,* 1972 A.S. 1089, 1091. See *Kaplan* v. *Henry Wenz, Inc.,* 331 Mass. 480, 486.

The evidence most favorable to the plaintiff is as follows: After the expiration of plaintiff's exclusive agency to sell the home owned by defendants for $40,500., defendants through Mr. Mirabella, authorized plaintiff, through Mr. Kintigos, its president, to show the property on an open listing. Thereafter on July 28, 1970, Mr. Kintigos obtained an offer of $36,000. for the real estate from a customer who was

also an employee of plaintiff. Upon being informed of this offer, Mr. Mirabella told Mr. Kintigos he would take $37,000. without carpeting and without drapes. The customer and his wife agreed to this, tendered a deposit of $1000., and signed a purchase and sale agreement providing for such a purchase to be closed on August 31, 1970 "subject to the buyer obtaining a mortgage of $30,000. from a recognized lending institution" and a commission to plaintiff from seller in accordance with prevailing rates. After defendants received this agreement, Mr. Mirabella called Mr. Kintigos and they agreed on $1500. as the amount of the commission. Mr. Kintigos told Mr. Mirabella the customer was an employee of the plaintiff. The defendants signed and returned the agreement with the change in the provision relative to the commission and an insertion of these words, "also enclosed statement applies." The encolsed statement signed by the defendant stated that "the wall to wall carpeting, universal utility cabinet and drapery are excluded from this sale" and "that the present owner will be released from any further responsibility to have the lawn and driveway completed for which monies are held in escrow . . . the present escrow of $800.00 will be the total amount transferred." Thereafter a dispute took place over the amount the buyer was willing to pay for the carpeting,

cabinet and drapery [1] which resulted in the sale not being consummated between the parties, notwithstanding that before the closing date the customer had obtained a commitment for the $30,000. mortgage from a licensed lending institution and any problems relating to the lawn and driveway had been resolved.

The rulings of the trial judge argued by the defendants to be error are in three categories:

1. Request No. 6 that "Upon all the evidence and as a matter of law Court is required to find for the defendants" was denied; and on Requests Nos. 1, 2 and 4, which were substantially to the same effect as No. 6, the trial judge ruled, *"On all the credible evidence the Court does not so find."*

2. On Request No. 11 which is set forth below [2] the trial judge ruled "Allowed but not

---

[1] There was evidence tending to show that the customer was willing to pay beyond the $37,000. for the real estate; an additional $500. for the carpeting and an additional $100. for the drapery, that the defendants were willing to close only if the customer paid $850. for these items, and that the defendants did later sell the property, including these items, for $37,900. through another broker to whom they paid a commission.

[2] "11. Upon the evidence and as a matter of law, when the plaintiff obtained a customer and had the customer sign a real estate agreement, upon terms other than those that the defendants listed the premises with the plaintiff, and the defendants make changes of the terms of said agreement and then sign the same, such is a rejection of the offer of said customer and a counter offer by the defendants. And when the customer has a new real estate agreement prepared upon different

applicable to the facts found — incomplete statement of facts."

3. Request No. 16 that "When defendants sign real estate agreement on account of misrepresentations of the agents, officers and employees of the plaintiff, the plaintiff is not entitled to recover a real estate commission even though the defendants breached said real estate agreement," was "*Allowed as a statement of law*"; and on Requests Nos. 19 and 20 which state that the employer/employee relationship of the plaintiff and the potential buyer is evidence of plaintiff's failure to act with fidelity and that the identity between the attorney for the potential buyer and the broker on this action for the commission is evidence of collusion between the buyer and the broker, the trial judge ruled, "*Allowed, but on all the credible evidence the court does not so find as a matter of fact.*"

We find no reversible error.

I. *Rulings on Requests Nos. 1, 2, 4 and 6.*

On the evidence most favorable to the plaintiff the court was warranted in concluding that the plaintiff earned its commission when it obtained a purchaser ready, willing and able to buy the property without the items of personal property for $37,000. This the plaintiff accomplished when its customer offered to

terms than those of the counter offer of the defendants, and sends said real estate agreement to the defendants, such is a rejection of the defendants' counter offer."

make such a purchase and evidenced the same by executing a purchase and sale agreement to that effect accompanied by a deposit of $1000. That the contract be made binding by defendants' execution thereof and the performance of the sale pursuant thereto was not a condition of the agreement between the defendants and the plaintiff, nor is it a condition precedent to recovery in an action for a broker's commission.

*Fitzpatrick* v. *Gilson,* 176 Mass. 477, 478-9: "When the broker has found a customer for that for which his principal has employed him to find a customer, the broker has performed his duty and has earned his commission, or, as the proposition is usually stated, if the person produced by the broker is able, ready, and willing to buy, sell, or lend, as the case may be, the broker's commission is earned. [Citations]

"When the broker has produced a customer, his duty is at an end; so far as his rights, or his duty, are concerned, it is immaterial whether a contract is, or is not, made, or, if made, whether it is, or is not, performed. The broker's right to a commission is no more dependent upon, or affected by, the fact that a contract is, or is not, drawn up and executed, than it is by the fact that the contract, if drawn up, is, or is not, carried into effect. Making or not making a contract with the

customer produced, enforcing or not enforcing a contract, if made, are matters for the broker's principal to do or not to do, as his ability and inclination determine; they are matters with which the broker is not concerned, and on which his right to a commission is not dependent." See *Henderson & Beal, Inc.* v. *Glen,* 329 Mass. 748, 751; *Lucier* v. *Young,* 338 Mass. 671, 672-3; *Gaynor* v. *Laverdue,* 1973 A.S. 111, 114-115.

The purchase and sale agreement executed by plaintiff's customer did, however, contain a significant addition to the terms which could be found to have been agreed upon between the defendants and the plaintiff. That was the conditioning of the buyer's performance upon "obtaining a mortgage of $30,000. from a recognized licensed institution". In *Cisco* v. *Zussman,* 1972 AS 1089 at 1091, the insertion of a similar provision for the benefit of the buyer was held to. have "made him unprepared to purchase the property on the defendant's terms . . . not a ready, willing and able buyer but one qualifying his acceptance." On the other hand, in the instant case there is ample ground to imply the acceptance of this qualification by the defendants. They obviously gave careful attention to the purchase and sale agreement submitted to them, but neither in the conversation with the plaintiff's president upon the defendants' receipt of the agree-

ment, during which the defendants caused the plaintiff to agree to a change in the commission clause, nor in any of the subsequent dealings by the defendants with the plaintiff and with the customer, including the dealings between counsel for the defendants and counsel for the customer, was any question raised by or on behalf of the defendants to the addition of this term. *Gaynor* v. *Laverdue,* 1973 AS 111, 116-117:

> "An express oral acceptance of a customer by the owner, or an implied acceptance of the customer as to ability resulting from the owner's failure to raise any question or objection to the customer on that ground may be found to have the same effect as the execution of a formal purchase and sale agreement insofar as the question of the customer's ability to purchase is concerned."

II. *Ruling on Request No. 11.*

In form this ruling was improper since it does not comply with the express requirement of Rule 27 of the District Courts (1965), the last paragraph of which states:

> "Whenever any request for ruling, founded upon evidence, shall be refused upon the ground that it is inconsistent with or inapplicable to the facts found, or because the facts recited in the request are not found, the court shall state

the facts found, or the facts recited which it does not find, upon which such refusal is based, unless the same appears from special findings filed.''

Special findings filed in this case would have made review far less complex and onerous and may have even affected defendants' decision to appeal.[3] ''The practice of denying requests for rulings because they are not applicable on the unreported facts found by the judge is unsound and should not be continued.'' *Freeman* v. *Crowell & Thrulow, Inc.,* 296 Mass. 514, 518.

However, since we have concluded the record warrants a finding that plaintiff earned its commission upon its production of a buyer ready, willing and able to buy at the defendants' price and upon terms agreed to by the defendants before the defendants annexed a rider to the purchase and sale agreement, the ruling on Request No. 11 is immaterial. Although the rider submitted by the defendants does not make their position clear, it is a fair inference from all of the testimony reported that the defendants insisted on an agreement for the price of the personalty after the broker

---

[3] Rulings on certain of the other requests are similarly in improper form.

It should also be noted that this report of the trial justice does not conform to the requirements of the Draft Report Model in Rule 28. The substance of the evidence should be set forth in narrative form rather than in a statement of what each witness testified. See *Mealey* v. *Camuso,* 30 Mass. A.D. 79.

had earned its commission. Even if it be assumed that there were no mutually acceptable purchase and sale agreement between the defendants and the buyer because the defendants seasonably sought to include the personalty at a separately agreed-upon price, the defendants cannot improve upon the terms and conditions agreed upon with the broker to defeat its claim for a commission after the broker had performed its undertaking. *Whitkin* v. *Markarian*, 238 Mass. 334. *Stern* v. *The Old Colony Trust Co.*, 276 Mass. 456. *Spence* v. *Lawrence*, 337 Mass. 355.

III. *Rulings on Requests Nos. 16, 19 and 20.*

The customer was an employee of the corporate plaintiff whose business relations with the defendant were being conducted by its president. There was evidence that the president told the defendants that the customer was an employee of the plaintiff. To the extent that this relationship raised any questions of double-dealing, this case is not controlled by the two cases cited by the defendant in support of its contention. There was no evidence of dividing the commission as in *Sullivan* v. *Tufts*, 203 Mass. 155, nor any evidence to require the inference of a secret "agreement with the buyer that would conflict in any way with the obligation he had assumed in acting in entire good faith in the interests of the de-

fendant," as in *Spritz* v. *Brockton Savings Bank,* 305 Mass. 170, 172.[4]

**The report is hereby dismissed.**

NORMAN E. JACOBS
  for Plaintiff

RICHARD L. FOX
  for Defendants

[4] The price of the eventual sale including the personalty was only $50. more than the amount of defendants' demand at the aborted closing with plaintiff's customer.