Dolan, P.J.
This is an action in which the plaintiff real estate broker seeks to recover a real estate brokerage commission allegedly due under the terms of a written agreement between plaintiff and defendant seller. The plaintiff also seeks to recover damages and attorneys’ fees under the provisions of G.L.c. 93A The court found for the plaintiff in the amount of $15,750 on its claim for a real estate brokerage commission and in the amount of $25 on its G.L.c. 93A claim. The court also assessed attorneys’ fees in the amount of $4000 for the G.L.c. 93A violation. The court made no subsidiary findings of fact. Defendant argues that plaintiff is not entitled to a real estate commission because it did not procure the buyer. We affirm.
There was evidence that in February of 1992, Mr. Michael Kenealy, President of Key Realty, Inc. (plaintiff), a Quincy based real estate firm, and Mr. Hall, an officer of the Hibernia Savings Bank (defendant), began discussions about marketing property located at 1456 Hancock Street, Quincy, Massachusetts (“the property”), which defendant expected to acquire by foreclosure. The parties, prior to these discussions, had an existing amicable business relationship of approximately 3-5 years.
On April 1,1992, plaintiff and defendant entered into an agreement with respect to selling the property. The sale price was set at $349,000 and the agreement had an expiration date of June 30, 1992. Under the terms of the agreement the plaintiff agreed to “use diligent efforts to find a purchaser.” For these efforts, defendant agreed to pay a 5% commission of the sale price to plaintiff, if during the term of (he agreement “the property [was] sold or if a prospective purchaser [was] procured ready, able and willing to buy in accordance with the price and terms with which defendant... indicated concurrence, whether or not the sale [was] completed.’[1]
Plaintiff marketed the property by preparing a marketing package which was used for the purposes of direct mailing and in presenting the property at trade shows. The package included information on the size of the building, its tax assessment, its last sale price, the current asking price and details of rental income. In addition, plaintiff advertised the property in newspapers and positioned sale signs at the property.
Plaintiff received inquiries regarding the property from three prospective buyers and from Anthony Politano (“buyer”), the eventual buyer. With the exception of buyer, all inquiries resulted in purchase offers being submitted through plaintiff to defendant.
The first prospective buyer’s offer was submitted on April 7, 1992. However, as a result of an inability to reach agreement on particular terms the negotiations were terminated. Prior to the breakdown of the negotiations with the first prospective *37 buyer, buyer contacted plaintiff by phone, to discuss the property after seeing the on site sign posted by plaintiff. On April 17, 1992, plaintiff advised buyer that the property was subject to a pending sale, forwarded buyer a marketing package, and advised him in an accompanying letter that it would contact him if the pending sale broke down. However, plaintiff did not promptly notify buyer of the break down of these negotiations.
The second prospective buyer’s offer was submitted on or about May 7, 1992. These negotiations were terminated on or about May 10, 1992. Sometime in May of 1992, buyer contacted plaintiff to discuss two different properties. He was not informed at that time that the property was still for sale. However, on May 25, 1992 plaintiff sent buyer a letter informing him that the property was available and offering to schedule a tour of the property. Buyer denies receiving the letter.
A third prospective buyer’s offer was submitted on or about June 26, 1992 in the amount of three hundred fifteen thousand dollars, a price defendant was willing to accept. On June 26, 1992, the date of the third offer, at buyer’s request, his daughter, an employee of defendant, obtained a listing of all the properties offered for sale by defendant. This list included the property. Buyer then contacted plaintiff and was told that a new offer had been submitted for defendant’s consideration. Buyer then contacted defendant directly and arranged to view the property that day. After viewing the property buyer made an offer to defendant of $307,000. Although lower in amount, this offer included a larger down payment than the other offer being considered by defendant. Defendant opted to negotiate with buyer and did not accept the other offer. The judge could have inferred that defendant opted to negotiate with buyer to avoid paying plaintiff a real estate commission.
Defendant notified plaintiff of buyer’s offer. Plaintiff responded by informing defendant that buyer was a person whom it had sent a marketing package and a recent letter informing him of the property. Buyer told defendant that except for the letter, which he denied receiving, the information was accurate.
On or about July 16,1992 defendant and buyer entered into a purchase and sale agreement for $315,000 that included plaintiff as a party ‘‘who would receive a commission of 2-1/2 percent of the sale price.” Plaintiff rejected this reduced commission when the purchase and sales agreement executed by buyer and defendant was brought to its attention. Defendant responded that it was not obligated to pay any commission and that this offer to pay a 2-1/2 % commission was only for the efforts plaintiff had made in marketing the property.[2] In addition, defendant orally stated to plaintiff that it should take the 2-1/2 % commission because the legal fees that it would cost to recover the additional 2-1/2 % commission would exceed any recovery.
Later, the selling price was reduced by $27,000 to reflect anticipated repairs. In addition, the selling price was further reduced when buyer agreed to indemnify defendant if defendant were found responsible for a commission to plaintiff. A closing was held on August 21,1992 with a final selling price of $289,000.
Defendant argues that buyer was not procured by plaintiff. This is a question of fact for the judge to decide. McEvoy v. Ginsberg, 345 Mass. 733, 736 (1963). The buyer first learned that the properly was for sale as a result of plaintiff’s signs on the property. Buyer then learned specific information concerning the property as a result of the mailing of information to him by plaintiff. In addition, there was evidence on May 25, 1992, plaintiff sent a letter to buyer and offered to schedule a tour of the property for him. This evidence is sufficient to support the judge’s finding. Bonde Realty Assoc., Inc. v. Davidoff, 41 Mass. App. Dec. 22 (1969). Plaintiffs have recovered commissions where they took no part in the negotiations, never saw the customer, and did nothing except advertise the property. Libby v. Ivers & *38 Pond Piano Co., 317 Mass. 478, 479 (1945). It is immaterial that the defendant, when it made the sale, may not have known that the plaintiff was the effective cause of it. Provost v. Burgin, 287 Mass. 273, 275 (1934).
Defendant further argues that the evidence does not warrant a finding on plaintiffs G.L.c. 93A claim. Refusal to pay for services because of a dispute over the amount owed does not by itself give rise to a claim under G.L.c. 93A. Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979). However, liability may be imposed under G.L.c. 93A if objectionable conduct attains “a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.” Levings, supra at 504.
In this case, the judge could have properly found that defendant’s willingness to pay a reduced brokerage commission fee with the caveat, in essence, of take it or lose it through litigation costs, coupled with defendant’s rejection of a higher offer from a prospective buyer obtained by plaintiff, and negotiating with the buyer to indemnify it if defendant were held liable for brokerage fees, warranted a finding amounting to a violation of G.L.c. 93A.
Report dismissed.

The contract also called for the payment of the 5% commission if within 30 days after the expiration of the contract, the property was sold “to any person whom... plaintiff ha[d] shown or otherwise introduced” to the property. The Report does not indicate when buyer’s acceptable offer was made to defendant.

The agreement authorizes defendant to act on its own behalf in the sale of the properly without incurring an obligation to plaintiff.